FLORENCE E. CAHILL

*v.*

TOWN OF HARRISON et al.

[Decided March 19th, 1917.]

1. A bill for injunction against a town and its collector to restrain the selling of lands held by virtue of a tax title to satisfy an alleged lien for taxes reported subsequent to the tax sale to complainant, must be sustained, if at all, upon the power of the court to remove a cloud from the title, or to enjoin a proceeding which will cast a cloud on title.

2. Although the bill does not specifically pray that such cloud may be removed, it may be amended to include proper allegations and prayers.

3. If equity has jurisdiction of a case it will settle all questions, legal and equitable.

4. The action of a circuit court in confirming the report of adjustment commissioners is not judicial, and therefore not binding in this court.

5. Where all the provisions of the statutes concerning tax sales are strictly fulfilled, the title to the property sold is in the purchaser at the tax sale, and all liens prior to the sale are discharged.

6. Where a town sells land for taxes, it waives its lien for taxes levied prior to the sale, and it is not necessary for the purchaser to serve a notice to redeem upon the town.

7. A purchaser at a tax sale to compel payment of current taxes under section 52, General Tax act (*P. L. 1903 p. 394; 4 Comp. Stat. p. 5133*), takes the property free from preceding taxes, and an adjustment commission under the Town Adjustment act (*P. L. 1898 p. 442; 4 Comp. Stat. p. 5246 § 403*) cannot by a subsequent report impose a lien based on such preceding taxes, notwithstanding the fact that the commission had been appointed prior to the sale.

On bill.

*Messrs. Raymond, Mountain, Van Blarcom & Marsh,* for the complainant.

*Messrs. Michael T. & Hugh C. Barrett,* for the defendants.

LANE, V. C.

The bill was filed May 10th, 1911, to secure an injunction restraining the town of Harrison and its collector from selling lands of the complainant to satisfy an alleged lien for adjusted taxes imposed under chapter 193, laws of 1898. *4 Comp. Stat. p. 5246 § 403,* &c., the Town Adjustment act.

The bill as filed had reference to several lots, but since then the controversy has been narrowed so that a decree will apply only to lot 20, block 99, Second ward, town of Harrison.

On August 16th, 1907, complainant purchased from the collector of the town the lot in question for the sum of $9.95 at a sale held under the General Tax act. *P. L. 1903 p. 394; 4 Comp. Stat. p. 5075.* On August 29th, 1907, a certificate of sale was delivered to complainant. Due notice to redeem was served on all persons interested in the property except the town, if it be held that it was a person interested. No one redeemed and the certificate with proof of service of notices was recorded in the register's office of Hudson county. On April 1st, 1902, under the Town Adjustment act (chapter 193, laws of 1898, page 442; *4 Comp. Stat. p. 5246 § 403*), commissioners of adjustment for the town were appointed by the circuit court of Hudson county. They qualified, and on July 1st, 1910, made a report to the circuit court fixing, adjusting and determining the amount of arrearages of taxes, assessments and water rents "which ought in fairness, equity and justice to be held, as-

sessed and charged against and actually collected from said lands and premises" at the sum of $375.53. Thereupon the collector advertised the lot for sale under the act to satisfy this lien and the bill was then filed to enjoin the sale.

No question was raised as to the jurisdiction of the court in the answer or on the argument. Jurisdiction must be rested, if it exists, upon the power of the court to remove a cloud on title, or to enjoin such a proceeding as will create a cloud on title. *Ludington* v. *City of Elizabeth, 34 N. J. Eq. 357; Kirkpatrick* v. *New Brunswick, 40 N. J. Eq. 46; affirmed, 41 N. J. Eq. 347; Bogert* v. *Elizabeth, 27 N. J. Eq. 568; Field* v. *West Orange, 37 N.J.Eq.434; Union Pacific Railroad Co.* v. *Cheyenne, 113 U. S. 516; 28 L. Ed. 1098; Fargo* v. *Hart, 193 U. S. 495; 48 L. Ed. 761; Ogden* v. *Armstrong, 168 U. S. 225; 42 L. Ed. 444; Scofield* v. *Lansing, 17 Mich. 437; Northern Pacific* v. *Carland, 3 Pac. Rep. 134; Weeler* v. *City of St. Paul, 5 Minn. 95; Vogler* v. *Montgomery, 54 Mo. 577; Kansas City* v. *King (Circuit Court of Appeals, Sixth Circuit), 120 Fed. Rep. 614.*

The rule seems to be that where under a statute providing for tax sales, &c., a deed delivered will be presumptive evidence of title, equity may intervene to either prevent the sale, or if the deed be delivered, to cancel it. Under the statute, section 8, a deed is made "presumptive evidence of title in the grantee therein named in all courts and places and at any proceedings or actions."

While the bill does not specifically pray that the cloud cast upon the title by the report of the adjustment commissioners should be removed, or that the town should be prevented from taking such proceedings as will cast a cloud upon the title, and although it does not specifically allege that the result of the conduct of the town would be, if permitted, a deprivation of complainant's constitutional rights, if counsel are so advised, it may be amended. If this court has jurisdiction it will settle all questions, legal and equitable. *Bullock* v. *Adams, 20 N. J. Eq. 367; Decker* v. *Caskey, 1 N. J. Eq. 427; Mosser* v. *Pequest Mining Co., 26 N. J. Eq. 200; Melick* v. *Cross, 62 N. J. Eq. 545.* The action of the circuit court in confirming the report of the adjustment commissioners was not judicial, and therefore

is not binding upon this court. *East Orange* v. *Hussey, 70 N. J. Law 244;* *Rutherford* v. *Maginnis, 72 N. J. Law 445.* In the stipulation of facts there is no statement that complainant was notified of application to confirm the report of the adjustment commissioners.

I come now to a discussion of the points at issue which are—

1. Whether after a town has sold under the General Tax act of 1903 to satisfy the lien of taxes for a specific year, adjustment commissioners who had been previously appointed may adjust taxes, &c., for years preceding that for which the property was sold and impose a new lien, after the property has been sold, and the town then proceeds to sell to satisfy the adjusted lien. In other words, whether the amount of the adjustment made after the sale becomes a lien prior to the right of the purchaser at the sale.

2. Whether it is necessary for the purchaser at the sale where there are prior unpaid taxes and an adjustment commission in existence to serve notice upon the town so that the town may have an opportunity to redeem.

## I.

Under the General Tax act of 1903, section 409 (*4 Comp. Stat. p. 5229*), unpaid taxes are made on and after the 20th day of December next after the assessment a first lien on the land on which they are assessed prior to every interest except the lien of subsequent taxes. The effect of this provision is that the tax of each year as it is imposed becomes a lien prior to all other interests in the property, including prior taxes. *Keene* v. *Sheehan, 154 Mass. 208;* *Smith* v. *Specht, 58 N. J. Eq. 51.*

Under section 52 of the act (*4 Comp. Stat. p. 5133*), in case of non-payment, the collector of the municipality may sell the land to such person as will purchase the same for the shortest term, * * * or in fee where no one will bid for a shorter term. Upon a purchase, the collector is directed to give a certificate of sale. Notice may then be given by the purchaser to redeem and the certificate and proof of notice may be recorded after the time to redeem has expired as a conveyance of the land. Section 56.

The effect of proceedings under the statute if properly carried out is to put the title of the property in the purchaser at the tax sale free, clear and discharged of all liens and encumbrances of every nature and description existing prior to the sale. This includes prior taxes and prior rights obtained by the municipality under a sale to satisfy the lien of taxes for preceding years. *Smith* v. *Specht, supra.*

The town insists that the adjustment commissioners under the provisions of chapter 193 (*P. L. 1898*), may, after such a sale, report with respect to taxes, assessments and water rents imposed prior to such sale, and that if the report is confirmed by the court subsequent to the sale, then by virtue of section 3, whereby the amount reported becomes a valid and binding tax, assessment and lien on the lands in lieu and instead of all outstanding claims of the said town, &c., and shall be a valid lien having priority over all other liens, &c., except taxes, assessments or water rates levied after the making of said report, the land becomes subject in the hands of the purchaser to a lien for the amount reported by the adjustment commissioners. In other words, as applied to the case *sub judice* the contention of the town is that, although concededly it could take no proceedings under the General Tax act to enforce the payment of taxes imposed prior to 1907, yet, because, in 1902 it had applied to the circuit court for the appointment of adjustment commissioners under the Adjustment act, it may now take proceedings to enforce the payment of an adjusted tax reported by these commissioners several years after the sale to enforce the payment of the tax of 1907. I think not. It has been held that the adjustment commissioners are without power to impose a lien for taxes, the lien of which has expired prior to the appointment of the commissioners in case a *bona fide* purchaser for value has intervened. *In re Commissioners of Plainfield, 21 N. J. L. J. 334.*

No case has been brought to my attention which directly governs that at bar. While it is clear that so long as property remains in the possession of the person who owned it at the time a tax was sought to be imposed, the legislature may provide, irrespective of whether the original lien has expired or not, for

a re-imposition of the lien, and while it may possibly be said that even if property comes into the hands of a *bona fide* purchaser for value, if there was a lien at the time of the appointment of the commissioners of adjustment, such lien may be reimposed, if prior to the devolution of title and the report the original lien has expired (which I doubt), it can hardly be said that where a town has taken proceeding under a statute to enforce the collection of a tax lien made by the statute paramount to the lien of all prior taxes that thereafter it may, acting through legislative agencies, resurrect the prior taxes and their lien. That is practically what is sought to be done. If these prior taxes had been paid before the report of the adjustment commissioners, a new lien could not have been imposed. I think the effect of the sale by the town to satisfy the lien of tax of 1907 is equivalent in law to a payment of the taxes levied for all preceding taxes. Upon the appointment of the adjustment commissioners, in 1902, all unpaid taxes, &c., by force of the statute became subject to their jurisdiction. The effect of the sale to enforce the collection of the tax of 1907 was to destroy, cancel and obliterate the preceding taxes, and hence, of course, to withdraw them from the jurisdiction of the adjustment commissioners. To hold otherwise would lead to endless confusion, and practically prevent municipalities from enforcing by sale of land payment of current taxes, and the result could only be reached, I think, by utterly ignoring the intent of the legislature as expressed in the General Tax act of 1903. Many municipalities are operating under the Adjustment act, some of the largest—Jersey City, Camden, Elizabeth and New Brunswick. In many instances the amounts of taxes accrued upon properties are more than the values of the properties, and yet the municipalities continue from year to year to levy current taxes. It would be impossible to secure a purchaser at a tax sale in such municipalities for a property upon which there were prior taxes if a prospective bidder knew that if the adjustment commissioners did not report he would, if he bought, take the property free, clear and discharged of the lien of the prior taxes, but that if they did report some time after the purchase, he would be obliged to pay the amount of the adjusted tax. The

34

owner of property has nothing whatever to do with the proceedings before the adjustment commissioners. There is no way by which he can compel a report. The matter is entirely within the control of the municipality. It is by force of the statute that upon their appointment the adjustment commissioners become vested with jurisdiction with respect to all unpaid taxes. If the adjustment commissioners may wait for three years after a sale to satisfy a current tax before reporting, they may wait for ten or fifteen years. In the meantime there is no way by which the purchaser at a tax sale can know the amount which he may finally be obliged to pay. He may, of course, pay the entire amount of the preceding taxes, but if he be obliged to do so, then the provisions· of the General Tax act making each year's tax a paramount lien is rendered of no effect.

My conclusion, therefore, is that the right of the complainant herein is superior to the right of the town under the adjusted tax.

## II.

It is next contended that complainant was obliged under the General Tax act to give notice to the town so that the town might have an opportunity to redeem.

The statute provides that notice should be given (section 59) to any person interested, and that (section 57) the owner, mortgagee, occupant or other person having an interest in the land may redeem.

I cannot believe that this applies to the town. It is the town that is selling. It could hardly be within the legislative contemplation that a municipality would sell to enforce the payment of the tax of one year, and would then, in order to protect a lien of prior taxes, pay to the purchaser the amount which the town received from the purchaser. When the town sold to enforce the payment of the taxes of 1907, it elected to, and did, actually waive all rights which it had theretofore existing in the property. By its action, its lien for prior taxes, if any existed, was obliterated. No legislation has been brought to my attention which would permit a town under the circumstances existing here to redeem.

I will advise a decree in accordance with this opinion to be settled on notice.