This is an action brought against the record owner of the property and the township of North Bergen to foreclose a tax sale certificate. The lien sought to be foreclosed is for the tax assessed for the year 1916 by the township of North Bergen. Complainant bought in the property and received a tax certificate on the 7th day of October, 1918.
The township of North Bergen has interposed an amended answer, wherein it sets up a defense against the foreclosure and a counter-claim. In substance, the answer alleges that certain taxes assessed by the township of North Bergen for the years from 1899 to 1913 have not been paid, and further, that the taxes assessed by the township of North Bergen for the years 1919 to 1925 have not been paid. The answer further alleges that the collector of taxes, who made the tax sale to complainant, had failed to include in his statement on which the tax sale was based the unpaid taxes assessed prior to 1914, and particularly that he failed to include in his statement the taxes which were a lien on the premises on the 1st of July, 1918. The answer further sets forth that the complainant had notice of the liens and claims of the township.
The counter-claim, in substance, sets forth the same allegations, and asks for relief that an account be taken of the taxes claimed to be due and that the complainant be ordered to pay to the township the amount that may be found to be due on the accounting.
Complainant is now before the court on its motion to strike out the answer and counter-claim.
(1) The ordinary rule as to assessments of taxes is, of course, that each year's assessment takes priority over all assessments for the previous years. Section 49 of the Tax *Page 174 
law (4 Comp. Stat. 1910 p. 5129); Cahill v. Harrison,87 N.J. Eq. 524; 100 Atl. Rep. 625. The ordinary rule further is that the effect of a tax sale for a particular year's assessment is to destroy, cancel, and obliterate the preceding taxes.Cahill v. Harrison, supra.
(2, 3) Accordingly, were it not for the possible effect of the Tax act of 1918, the tax sale to the complainant in October of 1918 on the assessment for 1916 would give the complainant a title free and clear of all prior assessments of taxes. It is the contention of the township, however, that this priority was destroyed by the Tax law of 1918, which went into effect on the 1st day of July, 1918, which was some three months before complainant made its purchase at the tax sale.
Primarily the question is, accordingly, whether the act of 1918 had the effect of making the taxes for the years prior to 1914 a lien paramount to that of complainant. This is the contention of the township. The township contends that the act of 1918 created a new lien as of the 1st day of July, 1918, for all prior taxes which had lapsed by reason of delay in enforcement, that these various taxes for the years between 1899 and 1913 were such lapsed taxes, and that this new lien created by this act became paramount to the lien for the taxes for the year 1916.
The applicable paragraph of the 1918 law reads as follows:
"Any lien which may have heretofore lapsed by reason of delay in enforcement is hereby revived to the end that the same may be enforced under the provisions of this act, but such revival shall not operate as against any person who has acquired an interest in said property for value subsequent to such lapse, and without notice of the claim of the municipality." P.L. 1918 p. 899 ¶57.
Defendant's construction of the statute seems to be a very strained one. The ordinary rule as to assessments for taxes is that each assessment takes precedence of any or all prior assessments. The contention of the township would result in jumping prior and normally subordinate liens over *Page 175 
the normally later and paramount liens. Such a construction seems wholly beyond the words of the statute. The proper construction of the section is that the legislature merely intended to keep alive liens that had lapsed by reason of delay in enforcement, and that there should be no change in priority of liens. It will be noticed that the language of the statute is: "Any lien * * * is hereby revived." There is not any language anywhere in this section, or in any other section of the statute, to the effect that the liens revived thereunder have any priority other than the priority they would have, if they had not lapsed.
The township's theory requires a construction that this language means that lapsed liens are not only reinstated, so that they are collectible, but that they are a new lien, created with the same force and effect as though a new tax had been levied on the 1st of July, 1918. I am unable to place this construction upon the language of the statute. The effect of this section is merely to reinstate lapsed liens, without in any way affecting the priority that otherwise they would have had. Accordingly the unpaid taxes prior to 1914 have not any priority over the tax deed of the complainant.
(4) As to the taxes subsequent to 1918, I do not think it is required that the complainant should pay these as a condition of maintaining this action. As a matter of law, and it is conceded by the complainant, the taxes for these subsequent years are paramount to the title of complainant, and would, of course, have to be paid. The complainant in his replication sets forth that he is ready and willing to pay these later taxes before the final decree. This seems to be in accordance with the statute, which provides that "no foreclosure decree * * * shall be entered unless evidence is produced in the foreclosure suit that all subsequent municipal liens have been paid to the time of the commencement of the suit." Pamph. L. 1919 p. 564 ¶ 49.
(5) As to the allegations of the township that the collector failed to list the old lapsed taxes which were reinstated by the act of 1918, in view of the construction placed on the act of 1918, this is immaterial. But in eny event I fail to see *Page 176 
how this could be of any advantage to the township, since it would be estopped from taking an advantage of the failure or neglect on the part of the collector.
There are other considerations which have bearing on the determination of this motion. The pleadings show that the collector, in making the sale, relied upon and purported to act under the Tax law of 1903 (Pamph. L. p. 394; 4 Comp. Stat. 1910pp. 5075 et seq.), that he complied with the requirements of that act so far as the assessments for 1916 was concerned, and that he gave a certificate of sale to complainant in due form under the act of 1903. It would seem probable that he acted in ignorance of the law of 1918, which had recently gone into effect. It would seem that such ignorance was more or less general, for we find that in the year 1920 the legislature, by the laws of 1920, at page 267, paragraph 3, expressly validated all sales made under the provision of the tax law of 1903.
The counter-claim in substance sets up the same matters alleged in the answer, and asks for affirmative relief, both as to the taxes prior to and also subsequent to 1916. Under the principles already outlined, the counter-claim shows no ground for affirmative relief.
Complainant is now before the court on its motion to strike out the answer and counter-claim. The motion to strike out is directed to the answer. This answer sets up that there are unpaid taxes for the years 1918 to 1925, which, of course, are subsequent to the certificate of sale held by the complainant, and are accordingly paramount to the complainant's title. If these assessments were made, and taxes have not been paid, complainant cannot get a title free and clear, as asked for in the complaint. It is conceded by complainant that any unpaid taxes assessed since 1918 are a lien upon the property. This is specifically covered by the replication filed by the complainant. Under these circumstances, the answer of the defendant is protanto defense to the bill of complaint.
Accordingly the motion to strike out the answer cannot be granted in full, but the motion is granted to the extent *Page 177 
of striking out so much of the answer as relates to the taxes assessed prior to 1914 and so much of the counter-claim as relates to such prior taxes.
Order on notice should be submitted in accordance with the views herein expressed.