151 N.J. Super. 502 (1977)
377 A.2d 691
FIDELITY LAND DEVELOPMENT CORPORATION, PLAINTIFF-RESPONDENT,
v.
RIEDER & SONS BUILDING AND DEVELOPMENT CO., INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Decided June 29, 1977.
*503 Before Judges BISCHOFF, MORGAN and KING.
Messrs. Greenbaum, Greenbaum, Rowe & Smith, attorneys for appellant (Mr. Dennis A. Estis on the brief).
*504 Messrs. Gutkin, Miller, Shapiro, Berson & Hochberg, attorneys for respondent (Mr. Barry I. Siegel on the brief).
PER CURIAM.
This appeal concerns the validity of so-called "due on transfer" clauses frequently found in mortgage notes and the conditions of their enforcement. Also involved is the essentially factual issue concerning the construction of the clause found in the mortgage note which purports to specify its date of maturity in terms of the date on which "building permits shall become available for construction upon the premises * * *."
The facts appear to be without substantial dispute except for those pertinent to interpretation of this latter clause. In late 1972 plaintiff Fidelity Land Development Company offered the premises in question, a 315-acre tract of undeveloped land, to a Solomon Rieder, president and principal stockholder of defendant company. Plaintiff had purchased the property shortly before the offer from Benjamin and Clayre Abramson in exchange for a $700,000 mortgage which, at all times pertinent to this matter, encumbered the property. The record is silent as to whether or not additional consideration was paid.
A bargain was struck for a total purchase price of $1,000,000 although no contract of sale was ever prepared. At the closing which took place on January 29, 1973 defendant company executed a mortgage in plaintiff's favor and a series of four promissory notes dated January 5, 1973, all prepared by plaintiff. The first three notes were for $25,000 each and have since been paid. The fourth note in the amount of $190,000 is the one upon which this suit is based. It provided that the principal sum thereof with interest was to be paid at "such date as building permits shall become available for construction upon the premises which are the subject of a mortgage of even date as hereinafter described." It further contained as a condition for acceleration thereof the "due on transfer" clause at issue here which reads as follows:
*505 Notwithstanding the foregoing, the unpaid balance of the principal sum of this note and interest hereon shall immediately become due and payable, at the election of the holder hereof, in the event of:

* * * * * * * *
c. Any change in the ownership of the mortgaged property * * *.
An addendum to the mortgage note limited plaintiff's recourse, in the event of a default in its payment, to the mortgaged land itself, immunizing the principals of the defendant mortgagor from any liability thereon. The principal sum was to bear interest "from such time as building permits shall be available for construction upon the premises, the subject of said Mortgage and Note."[1]
The mortgage was in the amount of $265,000. It again provided in the same terms as those contained in the note and the addendum thereto that after payment of the three $25,000 notes, the balance, represented by the fourth note, "shall be due and payable at such time as building permits shall be available for construction upon the premises * * *."
At the time of the closing, January 29, 1973, both parties were aware of the imminence of a building moratorium which, in fact, was imposed only two weeks after this transaction closed and remained in effect for about a year. The moratorium governed major construction in Pemberton Township and during its continuance no developer was permitted to make application for major subdivision approval. There is no question but that defendant's plans for the land it was purchasing, involving construction of approximately 1000-1500 units in a planned residential development, known to all, were covered by the moratorium, and that while it was in force no applications for building permits would even be received by the township. Indeed, it was the parties' awareness of the imminence of this moratorium which led to the inclusion of the clause delaying maturity which is at issue in this case.
*506 At the closing the $1,000,000 purchase price was accounted for by a $35,000 cash payment, assumption of the Abramson mortgage in the amount of $700,000, and execution of the four notes and the mortgage in the amount of $265,000. The deed from plaintiff to defendant dated January 5, 1973 was recorded February 2, 1973.
On February 5, 1973, three days after recreation, the corporate defendant transferred the deed to the premises to Rieder, its principal stockholder. This transfer was accomplished at Rieder's request for tax purposes on the advice of his accountant. The only consideration mentioned was in the amount of $1 and the deed, subject to both the Abramson mortgage and the mortgage from defendant to plaintiff, was not recorded until January 28, 1974, almost a year after the transfer. It is this transfer of February 5, 1973 which, according to plaintiff's contention, accelerated the due date of the note.
Suit on the note, however, was instituted on May 10, 1974; being unaware of the transfer which had occurred, plaintiff did not allege this conveyance in its complaint as the basis of acceleration. In fact, the complaint simply alleged that the note was due. When defendant, during the pendency of the suit, became aware that plaintiff regarded the transfer of the deed as a basis for acceleration, a retransfer of the deed was arranged. The corporate defendant received this conveyance from Rieder on April 15, 1975. Nonetheless, plaintiff amended its complaint to allege the deed from the corporate defendant to Rieder as accelerating the maturity of the note.
The building moratorium was lifted on February 13, 1974. In January of 1974, however, Rieder engaged the firm of Chester and Schoor, Inc. for the planning and preliminary design phases of a planned unit development consisting of approximately 1600 units. Design work commenced shortly thereafter and John Chester met with the township planning board in an informal meeting on March 21, 1974. Problems arose thereafter with respect to the township ordinance *507 governing planned unit developments, and in December 1974 the ordinance was amended eliminating those difficulties. Work on a redesign was then commenced in attempted compliance with the requirements of the new ordinance. Following another meeting with the planning board in February of 1975, Rieder submitted its formal application to the planning board for the planned unit development on the premises. Since that date continued efforts have been made to process the application, and as of the date this appeal was filed and heard, action by the township was still pending.
At the nonjury trial two issues were presented to the court for determination. The first one concerned whether the transfer of the mortgaged property from the corporate defendant to its principal stockholder accelerated the due date of the mortgage note and the effect, if any, of the reconveyance to the corporate defendant before this basis for acceleration was pleaded in the pending lawsuit. The second issue required the trial judge to construe the phrase describing the due date of the mortgage note as being "such date as building permits shall become available for construction upon the premises * * *." Plaintiff contended that the mortgage note became due on the date the moratorium was lifted, February 13, 1974, urging this was the date when building permits became available for construction. Defendant contended that the phrase referred to the date upon which building permits became available to defendant to build on the premises in question  in short, when they were issued. After hearing testimony on this obviously ambiguous clause admittedly drafted by plaintiff, the trial judge adopted plaintiff's construction, holding that the mortgage note was due on February 13, 1974 and since not paid on that date was in default. On the first issue, the judge held that defendant's conveyance of the property to its principal stockholder violated a principal condition of the mortgage note, accelerated its due date to the date of the *508 transfer, February 5, 1973, and that the breach of condition was not cured by the reconveyance.
We first consider whether, as the trial judge held, the corporate transfer of the mortgage property to its principal stockholder accelerated the due date of the note, particularly when it was reconveyed prior to assertion of the conveyance as a basis for acceleration in the present matter.
Contract clauses accelerating the due date of a given obligation on the occurrence of a specified event are generally considered valid contractual terms. Weiner v. Cullens, 97 N.J. Eq. 523, 526 (E. & A. 1925); Eisen v. Kostakos, 116 N.J. Super. 358, 366 (App. Div. 1971); Century Federal S. & L. Ass'n v. Van Glahn, 144 N.J. Super. 48, 51 (Ch. Div. 1976); see also, Annotation, 69 A.L.R.3d 713 (1976). Clauses accelerating an obligation on a transfer of ownership, variously termed "due-on-sale" clauses, "due-on-encumbrance" clauses, or simply "due-on" clauses, similarly have been generally upheld against contentions that they operate to restrict the right of alienation. See Tucker v. Lassen S. & L. Ass'n, 12 Cal.3d 629, 116 Cal. Rptr. 633, 526 P.2d 1169 (Sup. Ct. 1974). Neither party to this matter even argues that the clause in question is facially invalid.
Such clauses have as their obvious purpose the protection of a lender's security for an obligation and his need to have a borrower known by him to be conscientious, experienced and able. A lender may legitimately fear that any new buyer, unknown to and unapproved by him, may permit the property securing the debt to become rundown and depreciated in value, thus compromising his ability to secure repayment of the debt. Volkmer, "The Application of the Restraints on Alienation Doctrine to Real Property Security Interests," 58 Iowa L. Rev. 747, 778 (1973). It is the legitimacy of such reasons that have led the court to approve such clauses as being reasonable restraints upon the alienation of real property. Controversy has arisen, however, with respect to the conditions in which such clauses will be enforced. At the risk of some oversimplification, it can be stated that *509 there has emerged two general lines of authority. One view tends to the automatic enforcement of such clauses without regard to whether the underlying purposes of the clause have been frustrated. See, e.g., Baker v. Loves Park S. & L. Ass'n, 61 Ill.2d 119, 333 N.E.2d 1 (1975); First Commercial Title Inc. v. Holmes, 550 P.2d 1271 (Nev. Sup. Ct. 1976). Several recent New Jersey cases have apparently accepted that view. Century Fed. S. & L. Ass'n v. Van Glahn, supra; Poydan, Inc. v. Kiriaki, 130 N.J. Super. 141 (Ch. Div. 1974), aff'd o.b. 139 N.J. Super. 365 (App. Div. 1976). The other view requires the party seeking acceleration by reason of a transfer of ownership to show that the transfer has increased his risks or that the security for the loan is otherwise impaired or jeopardized by the transfer. Baltimore Life Ins. Co. v. Harn, 15 Ariz. App. 78, 486 P.2d 190 (Ct. App. 1971), pet. den. 108 Ariz. 192, 494 P.2d 1322 (Sup. Ct. 1972); Tucker v. Lassen S. & L. Ass'n, supra. The distance between these two camps is not, however, as wide as one may suppose. Thus, in First Commercial Title Inc. v. Holmes, supra, the court, although describing its position as favoring "automatic enforcement," nonetheless stated:
* * * [W]e do not suggest that the clause is absolutely enforceable without regard to surrounding circumstances. We would merely attach the same reverence to the due-on-sale clause as is accorded to any other provision which may appear in a contract.
Although enforceability of the clause is automatic, it is not absolute and may be vulnerable to certain defenses (i.e., waiver). However, we reject the view that imposes upon the beneficiary the burden of establishing justification for enforcement of the clause. * * * Instead, we would burden the trustor with the responsibility * * * A lender has the right to be assured in his own mind of the safety of his security without the burden of showing at each transfer that his security is being impaired. [550 P.2d at 1272].
Hence, in many instances the only difference between the two lines of authority lies in the allocation of proof of impaired security resulting from the transfer, with the relevancy of surrounding circumstances being recognized. Even *510 in the New Jersey cases which, on the surface, seem to have opted for the "automatic enforcement" rule, surrounding circumstances did not go without mention. See Century Federal S. & L. Ass'n v. Van Glahn, supra 144 N.J. Super. at 54; Poydan, Inc. v. Kiriaki, supra 130 N.J. Super. at 149. Neither of those two cases involved facts, such as those presented in this matter, precluding the existence of any threat whatever to the lender's security.
In this case plaintiff never even claimed that the transfer of the land to the corporate defendant's principal stockholder jeopardized its security for the loan. The land in question being undeveloped could not be subjected to depreciation for lack of care in maintenance. The transfer of ownership was merely formal, made for a nominal consideration, to the corporate defendant's principal stockholder and the person to whom the land was originally offered. Thereafter, the corporation continued to deal with the land as its own, made plans for its development, continued a dialogue with the township officials seeking approval of its development plans and in all ways acted as if the title were still being held by it. Nor could plaintiff contend that it was being deprived of the credit of the borrower to whom it had lent money. The note and mortgage limited plaintiff's recourse to the land itself; the principals were under no personal obligation to plaintiff. Since the transfer was made subject to plaintiff's mortgage and the mortgage of its predecessor, there existed no possibility that its security interest in the property would be compromised thereby. Plaintiff's recourse to this tract of undeveloped land in satisfaction of defendant's debt remained unimpaired by the transfer and the trial court did not find otherwise.
We conclude by the undisputed proofs in this case that the parties to the note never intended that a mere paper transfer of title, without any accompanying jeopardy to plaintiff's security, be the occasion for acceleration of its due date. In so holding we give no special consideration to this kind of clause, but "merely attach the same reverence *511 to the due-on-sale clause as is accorded to any other provision which may appear in a contract." First Commercial Title Inc. v. Holmes, supra. The presumed intention of the parties to any contractual instrument governs. See Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956); West Caldwell v. Caldwell, 26 N.J. 9, 25 (1958). We cannot assume that in absence of any threat to plaintiff's security interest in the land, or any frustration of the purposes of the clause, acceleration of the maturity of this note was intended.
Moreover, the land was reconveyed to the corporate defendant as soon as defendant became aware that plaintiff was regarding the transfer as a basis for acceleration. The land is presently in corporate ownership and defendant's contention that the default was cured has merit in our view. As a general rule, a default in payment of principal and interest cannot be neutralized. Kaminski v. London Pub, Inc., 123 N.J. Super. 112 (App. Div. 1973). The reason for that rule would seem to be that a contrary holding would empower the borrower to alter, unilaterally, the essential terms of the obligation. The same rule, precluding the curing of a default has not, however, been applied to contract terms designed to protect the lender's security. Hence, in Kaminski the default relating to the maintenance of insurance of the land given as security for the debt could be cured. As the court noted:
* * * The failure to pay taxes or to maintain insurance does not impair the security of the mortgagee if those defaults are corrected promptly, i.e., before the institution of foreclosure proceedings. On the other hand, a default in the payment of interest of principal is ipso facto an impairment of security and a violation of the principal condition of the mortgage conveyance.
It is apparent that the mortgage security was imperiled through the lack of insurance during the period of time involved. However, no actual impairment of the security ever occurred. [Id. at 116]
In this case plaintiff's security in the land was never in jeopardy from the transfer, and when the retransfer occurred *512 any possibility of impairment vanished. In these circumstances we see no reason why the reconveyance to the corporate defendant should not be viewed as eliminating the condition permitting acceleration.
Resolution of the second issue posed  that concerning construction of the contract clause describing the maturity date thereof in terms of when building permits become available  is complicated by the fact that defendant Rieder did not testify at the trial, allegedly because of his illness and because the assignment judge refused a second adjournment requested for this reason. Hence the trial judge's resolution of this issue was based solely upon evidence produced by plaintiff which, as will become apparent, provided something less than fully satisfactory support for the ruling.
There is no doubt but that the clause describing the maturity date of the note is patently ambiguous. Did the parties intend that the note should be paid when applications for building permits would again be received and processed by the township? Or did they intend that payment would be due when a building permit was actually issued defendant? Or did they intend that the note would be paid after a reasonable time for applying for the permit had passed? Nothing in this clause or in other sections of this note, or the accompanying mortgage, sheds light on the probable intention of the parties to this instrument. It was for this reason, in recognition of the ambiguity inherent in the critical clause, that the trial judge received testimony.
Examination of the record discloses that the evidence adduced by the plaintiff is far from harmonious. Howard Davis, the person who drafted the note, testified at one point that he understood the clause to mean that the "note would become due when the purchaser was in a position on an application to obtain permits from the town * * *. The intent was that payment would be due when a person with normal diligence could obtain building permits * * *." This testimony clearly fails to support the trial judge's conclusion that the note became due when the building ban *513 was lifted; such a construction does not allow time even for the most diligent of persons. Davis' testimony, however, thereafter changed. In response to later questions by the trial judge he testified that payment was due when the building ban was over and permits theoretically available; inconsistency between this interpretation of the clause and the one previously given was denied. At other points in his testimony, other nuances of meaning were injected into the clause. He did not believe, stated Davis, that "we had in our mind that as of the day when a potential moratorium would be over the note would be due." Davis later on suggested the understanding that time would be given defendant for preparation of the application for subdivision approval followed by requests for the building permit. Davis' shifting testimony betrays a marked uncertainty concerning the substance of the parties' agreement, his draft of which provided the subject matter for the trial court's scrutiny. Bearing in mind that his understanding of the terms of the agreement was derived from Salvatore Davino, plaintiff's president, and was to a considerable extent at variance with Davino's testimony concerning the terms of the agreement, one tends to infer that the maturity date of the note never received clear definition in the minds of the parties.
Jack Stein, a salesman for plaintiff, who originally offered the land to Rieder, understood that the note was to be due when building permits were obtained. It later developed, however, that his knowledge of the matter ceased after the offer and he was unaware of the final deal struck after negotiations. His testimony was deemed to be of little value in resolving this issue.
Primary reliance was placed by the trial judge on Davino's testimony. He testified that the agreement reached after telephone negotiations was that the note would become due when the moratorium was lifted, rejecting Rieder's wish that maturity would be coincident with issuance of building permits.
*514 We note initially that if such was indeed the intention of the parties, the contract failed to so indicate. The draftsman's apparent uncertainty as to the substance of the agreement with regard to maturity is reflected in the instrument he drafted. Had he understood from Davino that the note was to become due when the moratorium was lifted, he could easily have said so. The fact that it was plaintiff who assumed responsibility for the drafting of the instruments evidencing this transaction suggests that ambiguities therein be resolved against that party. Moses v. Edward H. Ellis, Inc., 4 N.J. 315, 323 (1950). The trial judge, fully aware of that rule of construction, nonetheless construed the instrument against defendant, clearly indicating that his belief in the accuracy and veracity of Davino's testimony required that result.
Even according the trial judge the deference due him when evaluating the credibility of the witnesses who testified, we are nonetheless left with the feeling that in view of the equivocal nature of the evidence produced, a fair determination of this issue could not be made without Rieder's testimony as to the substance of the agreement reached. The trial judge ruled on the basis of only half a story told; the other half was made unavailable by the assignment judge refusing defendant a second adjournment because of Rieder's illness.
We therefore feel constrained, in the interests of justice and because of the substantial forfeiture to which defendant is exposed by the trial court judgment, to remand this matter to the trial judge for the prompt taking of Rieder's testimony and a reconsideration of his ruling in light of the testimony received. Any rebuttal necessary by reason of this additional testimony should, of course, be received as well.
Reversed and remanded for further proceedings consistent with this opinion. We retain jurisdiction.
NOTES
[1] Apparently, the $190,000 obligation was to be interest-free until payable.