RICHARD B. CONNER *et al.*, Plaintiffs-Appellees, *v.* FIRST NATIONAL BANK AND TRUST CO. OF ROCKFORD, Trustee, Defendant-Appellant.

Second District   No. 81—857

Opinion filed August 11, 1982.

Frank P. Maggio and Thomas D. Luchetti, both of Rockford, for appellant.

Lawrence R. Kream, of Paddock, McGreevy & Johnson, of Rockford, for appellees.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiffs, Richard B. Conner and Sally Garten, title holders to the subject real estate, sued the defendant, First National Bank and Trust Co. of Rockford, as trustee of Trust No. 4772, the holder of equitable title to the real estate under an installment purchase contract, to declare the contract forfeited and to secure possession. The basis of the action is an alleged breach of a clause in the contract permitting an increase in interest upon conveyance or assignment of the purchaser's interest. The defendant appeals from a forcible entry and detainer judgment in favor of plaintiffs.

The essential question posed is whether the transfer from a prior trustee to the defendant trustee of the purchaser's interest in a contract for deed constitutes a "conveyance or assignment" within the contract provision.

In the background of the controversy is the fact that in 1968 Robert and Sally Garten executed a mortgage to Bell Savings and Loan Association containing a due-on-sale clause with an interest rate of $6^{3/4}\%$ . In 1970 Conner Realtors Inc.[1] entered into an installment contract to sell the subject real estate, improved with a two-apartment building, to Tennyson and Eleanor Phillips with interest at 7%. With the sellers' knowledge and consent Phillips' interest in the installment contract was assigned to the First National Bank of Belvidere, as trustee under its Trust No. 466, with Betty Brenner as the sole beneficiary. Thereafter plaintiffs dealt with Betty Brenner in connection with all matters under the contract. There is some dispute whether the interest rates were increased at this time, but it is undisputed that the monthly payments remained the same.

In 1978 the Belvidere Bank closed its trust department and notified the trust beneficiary, Brenner, that she was to arrange for another trustee. In 1979 the Belvidere Bank, as trustee, executed a "warranty deed" describing the subject property to the Rockford Bank, as trustee. In 1980 the Rockford Bank, as trustee, quitclaimed its interest to the Belvidere Bank, as trustee, which, on the same day, assigned its right, title and interest in the trust *res* to the Rockford

---

[1]Although the record is not clear as to the source of the interest of "Conner Realtors Inc." in the property, apparently Robert Garten is deceased and plaintiffs are his executors.

Bank, as trustee. Brenner remained the sole beneficiary throughout and the provisions of the Belvidere Trust No. 466 and the Rockford Trust No. 4772 were the same.

The plaintiffs were not advised by Brenner and were unaware of the transfer from the one trustee to the other until February 6, 1981, when they received a letter from the Bell Savings and Loan. Bell had no knowledge of any dealings of the plaintiffs relating to the subject property subsequent to their mortgage but had been alerted to the contract sale by an endorsement of insurance showing the interest of the defendant. The letter stated that the transfer was prohibited without Bell's written consent, but that Bell would give consent if plaintiffs would agree to a modification of the mortgage and note increasing the interest rate to 15%. Unable to make an agreement with Brenner, plaintiffs agreed to Bell's demand, then sent a letter to Brenner advising of the increase in the amount of the additional payment correspondingly due under the installment contract. Upon Brenner's refusal to pay the increased amount these proceedings ensued.

The installment contract contains the following provision:

> "(4) The Purchaser, on behalf of himself, his successors and assigns, agree [sic] that in the event his interest shall be conveyed or assigned to any person or persons, firm, trust or corporation, other than the Purchaser or any one or more of them, then the Seller, after such transfer of right, title or interest shall be privileged to increase the annual rate of interest to be paid under the terms of this instrument. ***"

■ Upon analysis of the form of the transaction entered into by Brenner, it appears that there was no such conveyance or assignment of her interest as purchaser when Belvidere Trust No. 466 transferred her interest to Rockford Trust No. 4772 which would permit the increase in the interest rate pursuant to the above provision. The plaintiffs consented to the transfer of the interest of the Phillipses as the original contract purchasers to a trust of which, as plaintiffs knew, Brenner was the sole beneficiary. The subsequent transfer to the defendant as trustee was not for any advantage sought by Brenner, but was necessary because the first trustee had given up the trust business. The beneficiary, Brenner, remained the same after the transfer to the new trustee. Brenner was the same person known to be the assignee of the original contract purchasers and was continually dealt with as such by the plaintiffs. Read literally, the language of paragraph (4) might seem to support plaintiffs' assertion that the vendee's interest was transferred. However, it is a familiar rule that "courts of equity look to the substance rather than to the form of

written instruments, and seek to discover and carry into effect the real intention of the parties, gleaned not only from the written instruments they executed but from their subsequent acts and conduct with reference thereto." (*Trapp v. Gordon* (1937), 366 Ill. 102, 111.) Here, the transfer of legal title to the vendee's interest was insubstantial because the identity of the trustee makes no difference under these circumstances; Brenner remained the real party in interest throughout. The manner in which the plaintiffs dealt with Brenner compels the conclusion that there is no legitimate interest of the plaintiffs to be served by the increased interest provision of paragraph (4) of the contract based purely on the formal transfer of title to the vendee's interest from one trustee to another.

■ We have no Illinois authority which is precisely on point. A close case factually is *Fidelity Land Development Corp. v. Rieder & Sons Building & Development Co.* (1977), 151 N.J. Super. 502, 377 A.2d 691. In *Rieder*, the court held that a "due on transfer" clause (which is not precisely the same as the increase in interest clause here, but involves similar analysis) was not triggered by a "mere paper transfer of title" from a corporation to the corporation's principal stockholder. (151 N.J. Super. 502, 510, 377 A.2d 691, 695.) The court concluded that the parties to the note did not intend that this formal transfer be the occasion for acceleration since the parties acted in all ways as if the title were still being held by the corporation. Similarly, here, we conclude that paragraph (4) was not intended to include a mere formal transfer from one trustee to another, where the beneficiary remained the same, and was dealt with in the same way throughout.

■ Various other matters raised by the parties bear on this conclusion. The defendant has characterized the trust here involved as a "land trust" in arguing that the beneficiary is the real party in interest. (See *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 492.) An Illinois land trust is a particular device for holding title, both real and equitable, to real estate leaving nothing but a personal property interest in the beneficiary, with various consequences which have been stated in developed law. (*People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 487-88; *Levine v. Pascal* (1968), 94 Ill. App. 2d 43, 50.) Here, the trustee did not hold both legal and equitable title to the subject real estate but merely held title to the trust *res*. This was the installment contract and involved an equitable interest in the property with the real title remaining in the plaintiffs until the purchaser became entitled to a warranty deed. Nevertheless, the transaction, however characterized, was not a nullity and thus not a convey-

ance at all as defendant argues. Generally, and with exceptions not here applicable, a contract purchaser becomes the equitable owner of real property upon execution of the installment contract. (*Hinsdale Federal Savings & Loan Association v. Gary-Wheaton Bank* (1981), 100 Ill. App. 3d 746, 748.) This equitable interest may be the subject of a trust. *Burke v. Burke* (1913), 259 Ill. 262, 268.

Viewed as the beneficiary of an ordinary trust, Brenner has equitable title to the trust *res, i.e.,* the vendee's interest in the contract, and the Rockford Bank, as trustee, has legal title to the trust *res,* the contract, as distinguished from the legal title to the real estate which is held by the plaintiffs. This does not change our basic conclusion that Brenner, as beneficiary of the trust, was, and remained, the real purchaser. In this connection it should be noted that the trustee had no active duties or obligations with regard to the contract. Brenner, the beneficiary, retained control over performance of the contract and retained full responsibility for making payments and performing all other obligations. Further, the plaintiffs dealt with Brenner as though she had full title to the vendee's interest, and it is difficult to imagine how the parties' conduct in performing their respective obligations would have been at all different had Brenner been an ordinary vendee and not used the trust form. Reinforcing this conclusion is the fact that the transfer to the defendant trust was not for any consideration.

Although unnecessary in view of our conclusion that the increase in interest clause was not intended to apply to the particular circumstances of this case, we will deal briefly with defendant's contentions that equitable defenses have been shown and also that paragraph (4) is void as against public policy. *Baker v. Loves Park Savings & Loan Association* (1975), 61 Ill. 2d 119, 126.

Plaintiffs' failure to notify Bell of the initial sale to the Phillipses was not inequitable conduct towards the defendant upon which it could claim reliance (*Leaf v. Barton* (1980), 91 Ill. App. 3d 373, 375), and no waiver or estoppel has been shown on this record.

■ We also have rejected defendant's argument that paragraph (4) of the contract is void. The defendant has not argued that due-on-sale clauses or equivalent clauses accelerating obligations under contracts on the happening of specified events are invalid. Those clauses, of course, may be valid contractual provisions. (*Baker v. Loves Park Savings & Loan Association* (1975), 61 Ill. 2d 119, 124-25; *Damen Savings & Loan Association v. Heritage Standard Bank* (1982), 103 Ill. App. 3d 301, 302-03.) Defendant's argument, instead, is that paragraph (4) of the installment contract is void for the reason that it al-

lows a contract seller to increase contractual interest rates "without limitation and with no ascertainable measure of determination." The defendant's reliance on the interest statute in this regard is unfounded.

Unless allowed by Federal law, no mortgage or contract secured by residential real estate may provide for a change in the interest rate during the term of the mortgage or contract. (Ill. Rev. Stat., 1980 Supp., ch. 74, par. 4(2)(d).) Business loans are exempted from this statutory regulation. (Ill. Rev. Stat., 1980 Supp., ch. 74, par. 4(1)(c).) Defendant concedes that the property here is business property and that the statute does not apply to this case, but argues that the statute creates a general "public policy" requiring definiteness in contractual rates of interest.

Defendant cites no authority indicating the existence of such a "public policy," nor any cases invalidating contractual provision such as the one at issue here. Moreover, section 4(2)(d), upon which defendant relies, was not in effect when the contract was executed. Finally, the argument that the statute's "public policy" controls a transaction which is specifically exempted from the reach of the act itself is illogical; it is more reasonable to take the inapplicability of the statute to business loans as an indication that "public policy" does not require that business loans be regulated as closely as loans involving residential property. We will not, therefore, hold that the increased-interest clause in the contract is necessarily invalid, but only that, as discussed above, it has not been triggered here.

The judgment of the circuit court of the Seventeenth Judicial Circuit is reversed.

Reversed.

LINDBERG and HOPF, JJ., concur.