191 N.J. Super. 327 (1983)
466 A.2d 968
COLUMBIA SAVINGS & LOAN, PLAINTIFF,
v.
ANITA M. EASTERLIN, JUDITH BOGUSZ, A/K/A JUDITH A. BOGUSZ, FIRST PEOPLES BANK OF NEW JERSEY, NATIONAL BANK & TRUST CO. OF GLOUCESTER COUNTY, INTERNAL REVENUE SERVICE, UNITED STATES OF AMERICA, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Camden County.
Decided March 29, 1983.
*329 Richard B. Supnick for plaintiff (Supnick, Mitnick, Vogelson & Josselson, attorneys).
Peter M. Rhodes for defendants Easternlin and Bogusz (Cahill, Wilinski & Cahill, attorneys).
Thomas G. Camp attorney for defendant National Bank & Trust Company of Gloucester County.
*330 DEIGHAN, J.S.C.
This is a foreclosure action to enforce a due-on-sale clause in a mortgage. Plaintiff seeks to accelerate payment of the principal and interest based upon a change of ownership of the premises. Plaintiff and defendants mortgagor and grantee apply for summary judgments. Defendant National Bank & Trust Company, a second mortgagee, also moves for summary judgment on its crossclaim against the individual defendants. Essentially, the motions require a determination of the applicability in New Jersey of Title III, Part C, Section 341(b)(1) of the Depository Institutions Act of 1982, 96 Stat. 1505, 12 U.S.C.A. § 1701j-3. The act, which was recently enacted by Congress effective October 15, 1982 preemptorily validates, with certain exceptions, due-on-sale clauses in home mortgages held by all banks and savings and loan associations, including state chartered institutions. It is held that the act is applicable in New Jersey and that due-on-sale clauses in home mortgages are enforceable under the act.
On June 16, 1978 defendant Anita Easterlin executed a mortgage to plaintiff in the amount of $25,000 on premises located at 210 Maud Avenue, Brooklawn, New Jersey. On October 1, 1980 Easterlin conveyed the premises to defendant Judith Bogusz. Thereafter, Bogusz made all monthly mortgage payments with her personal check. The mortgage contains a clause accelerating payment of the principal and interest upon transfer or conveyance of the property:
In the event the title to the mortgaged premises shall become vested in any person or entity other than the Mortgagors herein, the aforesaid principal indebtedness or so much thereof as may remain unpaid with all arrearages of interest and all further or additional advances made hereunder, shall at the option of the mortgagee become and be due immediately thereafter, anything herein contained to the contrary hereof in anywise notwithstanding.
Subsequently, Bogusz placed a second mortgage on the property with First Peoples Bank and on April 1, 1981 she replaced that mortgage with another mortgage in the amount of $25,000 with National Bank and Trust Company of Gloucester. On September 10, 1982, after commencement of the foreclosure *331 proceedings, Bogusz reconveyed the property to Easterlin. Plaintiff's mortgage also contained a clause accelerating payment of principal and interest if the property was further encumbered by additional indebtedness. Plaintiff is not pressing the foreclosure for breach of that clause but is relying on the due-on-sale clause.
Initially, plaintiff contends that a due-on-sale clause is a valid contractual condition which automatically accelerates payment of the mortgage upon breach of the clause. Poydan, Inc. v. Kiriaki, 130 N.J. Super. 141 (Ch.Div. 1974), aff'd o.b. 139 N.J. Super. 365 (App.Div. 1976); Shalit v. Investors S. & L., 101 N.J. Super. 283 (Law Div. 1968). But see Fidelity Land Develop. Corp. v. Rieder & Sons, 151 N.J. Super. 502 (App.Div. 1977). See also, Fogel v. S.S.R. Realty Associates, 183 N.J. Super. 303 (Ch. Div. 1981) and Egner v. Egner, 183 N.J. Super. 326 (Ch.Div. 1982), aff'd o.b. 185 N.J. Super. 1 (App.Div. 1982). Additionally, plaintiff contends that acceleration of a mortgage loan for breach of a due-on-sale clause to obtain the benefit of current interest rates is a proper and reasonable business practice of a savings and loan association. It appears that updating its loan portfolio is consistent with the purpose of N.J.S.A. 17:12B-12 for the promotion of "thrift, home-ownership and housing or other investment funds ..." Century Fed. S. & L. Ass'n v. Van Glahn, 144 N.J. Super. 48, 53-55 (Ch.Div. 1976).
Plaintiff further invokes the Depository Institutions Act of 1982, supra, enacted by Congress, effective October 15, 1982. As noted, § 341(b)(1) of the act provides that a lender may, subject to certain exceptions, enter into or enforce a contract containing a due-on-sale clause with respect to a real property loan. This section preempts any provision of the constitutions or laws, including judicial decisions, of any state to the contrary. Ibid.[1]
Section 341(a)(2) of the act defines the term "lender" as a person, or government agency making a real property loan, or *332 any assignee or transferee of a person or government agency. This definition included individuals, state and federally-chartered savings and loan associations, mutual savings banks, state charter banks, national banks, mortgage bankers and other HUD approved lenders, manufactured home retailers which extend credit, finance companies which make real property loans, agencies of the federal government, such as the Department of Housing and Urban Development and transferees, Federal Home Loan Mortgage Corporation and the Federal National Mortgage Association. Legislative History. L. 97-20, U.S.Code Cong. & Admin.News 1982, 3110, 3111; 29 N.J.Practice (Cunningham & Tischler, Law of Mortgages (1982 Supp.)) § 26A at 37.
Defendants Easterlin and Bogusz contend that the conveyance from Easterlin to Bogusz did not impair the security of the mortgage; that on September 10, 1982, after foreclosure suit was instituted, Bogusz reconveyed the property to Easterlin and cured any breach of the due-on-sale thereby precluding foreclosure under Fidelity Land Develop. Corp. v. Rieder & Sons, supra. They assert that under § 341(c)(1) of the Depository Institutions Act of 1982 the mortgage herein concerned is exempt from the application of the act. This section provides that in states where enforcement of due-on-sale clauses was either prohibited or restricted by state law prior to the effective date of the new federal statute, the act is inapplicable for three years with respect to mortgages originated or assumed after establishment of the rule prohibiting or restricting enforcement of the due-on-sale clause and before the effective date of the new federal statute. See 29 N.J. Practice, supra at 37. Defendants point out that plaintiff's mortgage was made and assumed in 1978 after the case of Fidelity Land Develop. Corp. v. Rieder & Sons, supra, which was decided in 1977. They argue that under Rieder & Sons a mortgagee seeking to accelerate a mortgage on a transfer or ownership must show that the transfer increased the risk or impaired the security of the mortgage. 151 N.J. Super. at 509. They assert that the reconveyance eliminated the *333 condition which permitted the acceleration. Id. at 511-512. Defendants further maintain the acceptance by plaintiff of payments from Bogusz after transfer constitutes a waiver or estoppel barring foreclosure. Engler v. Buesser, 106 N.J. Eq. 173 (E. & A. 1930); Freund v. Weisman, 101 N.J. Eq. 245 (E. & A. 1927); Bell v. Romaine, 30 N.J. Eq. 24 (Ch. 1977).
The Depository Institutions Act of 1982, with certain exceptions, preempts state law on the effect of due-on-sale clauses. § 341(b)(1) provides:
Notwithstanding any provision of the constitution or laws (including the judicial decisions) of any State to the contrary, a lender may, subject to subsection (c), enter into or enforce a contract containing a due-on-sale clause with respect to a real property loan.
The exception referred to in § 341(c)(1) states:
In the case of a contract involving a real property loan which was made or assumed ... during the period beginning on the date ... on which the highest court of such State has rendered a decision (or if the highest court has not so decided, the date on which the next highest Appellate Court has rendered a decision resulting in a final judgment . ..) prohibiting such exercise and ending on the date of the enactment of this section, the provisions of subsection (b) shall apply only in the case of a transfer which occurs on or after the expiration of three years after the date of the enactment of this Act....
Under this latter section, if the mortgage with a due-on-sale clause was made or assumed between the date on which an appellate court rendered a decision prohibiting or restricting the exercise of such a clause and October 15, 1982, the provision of subsection 341(b)(1) applies only in the case of transfer which occurs three years after October 15, 1982. See, also, 29 N.J. Practice, supra at 37.
§ 341(c)(1) refers to a decision by the "highest court of such state" or, if the highest court has not so decided the date on which the "next highest appellate court" has rendered a decision resulting in a final judgment. In Barry M. Dechtman, Inc. v. Sidpaul Corp., 89 N.J. 547 (1982), the New Jersey Supreme Court noted that the question concerning acceleration for violation of the due-on-sale provision has heretofore been unresolved by that court. Id. at 555. The court noted the split of authority on the question citing Poydan, Inc. v. Kiriaki, supra, 130 N.J. Super. at *334 149, 150 and cases from other jurisdictions upholding acceleration, and Fidelity Land Develop. Corp. v. Rieder & Sons, supra, 151 N.J. Super. at 508-514 and cases from other jurisdictions denying acceleration of the due-on-sale clause unless the security is impaired by the transfer.
In New Jersey we therefore have two appellate decisions within one year of each other, one unholding an acceleration of the due-on-sale clause per se upon transfer and the other denying acceleration except upon proof of impairment and security upon transfer. Neither case involved a lending institution but rather concerned private financing transactions between a buyer and seller. Both dealt with the impairment of security concept. Poydan, Inc. involved corporations which owned a real estate, personal property, a restaurant and liquor license. The shares of stock of the corporations were held in escrow by the seller. The entire business was sold in violation of the pledge agreement and the mortgage with a due-on-sale clause. The court stressed the importance of reliance upon the individual operating the restaurant and the validity of the liquor license and held that it was not unreasonable for the creditor to reserve the right to determine whom it would accept as its debtor in possession of the security. 130 N.J. Super. at 149. As such, a violation of the due-on-sale clause or due-on-transfer clause ipso facto triggered an acceleration.
Rieder involved a transfer from a corporation wholly owned by an individual to the individual. The Appellate Division predicated its holding on the fact that the conveyance was nothing more than a "mere paper transfer of title."[2] The land was reconveyed to the corporate defendant as soon as defendant became aware that plaintiff was regarding the transfer as a basis for acceleration. The Appellate Division held:

*335 We concluded by the undisputed proofs in this case that the parties to the note never intended that a mere paper transfer of title, without any accompanying jeopardy to plaintiff's security be the occasion for acceleration of its due date. In so holding we give no special consideration to this kind of clause, but "merely attach the same reverence to the due-on-sale clause as is accorded to any other provision which may appear in a contract." [151 N.J. Super. at 510, 511].
In Rieder, the court was quoting from First Commercial Title, Inc. v. Holmes, 92 Nev. 363, 550 P.2d 1271 (Nev.Sup.Ct. 1976).
... [W]e do not suggest that the clause is absolutely enforceable without regard to the surrounding circumstances. We would merely attach the same reverence to the due-on-sale clause as is accorded in any other provision which may appear in a contract.
Although enforceability of the clause is automatic, it is not absolute and may be vulnerable to certain defenses. (i.e., waiver) [Id. 550 P.2d at 1272].[3]
It has been stated that the language in Rieder, requiring impairment of the security of the mortgage to enforce a due-on-sale acceleration clause is obiter dictum. 29 N.J. Practice, supra, § 26A at 38. In Rieder, the transfer from the individual to the wholly owned corporation was merely a transfer to an alter ego and not a sale or transfer to a third person.[4] Private dealings such as Poydan and Rieder usually involve an isolated transaction and subsequent loans are not recurrent. The primary concern of the seller in such instances is the preservation of the security. On the other hand, with current inflation, the principal *336 concern of banks and savings and loan associations is the obligation of those institutions to maintain their loan portfolio at current rates of interest. Central Fed. S. & L. Ass'n v. Van Glahn, supra, 144 N.J. Super. at 53.
The due-on-sale clause emerged after the depression in the 1930s. It was used by thrift institutions on a practical and simple philosophy; the lender, who had made a loan to one credit-worthy individual, was assured that the home would only be sold to another creditworthy individual. Kratovil, "A New Dilemma For Thrift Institutions: Judical Emasculation of the Due-On-Sale Clause," 12 John Marshall J. of Pract. and Proc., 299, 300 (1979). The purpose of the due-on-sale clause served well until the beginning of the 1970s and the rise in the rate of interest. Depositors in thrift institutions withdrew their money to take advantage of higher interest rates offered in other forms of investment. Finding themselves with many outstanding loans at rates below the prevailing interest rates, the thrift institutions began to search for alternative methods of increasing portfolio yield. The due-on-sale clause became the means toward this end. When the original borrower attempted to sell his home subject to the existing mortgage, the lender refused to consent to the sale unless the purchaser would agree to pay a higher interest rate on the mortgage loan. Ibid, footnotes omitted. This spawned a series of litigation both upholding and invalidating the clause. Id. at 300-301, n. 4 and 5. See also, Barry M. Dechtman, Inc. v. Sidpaul Corp., supra, 89 N.J. at 555. Kratovil in his article says:
However, the intention of lenders in the 1930's is not necessarily the same as in the modern era of rising interest rates and universally recognized inflation. At least in part, the due-on-sale clause in recent times owes its existence to the fact that thrift institutions are keenly interested in improving their yield by upgrading their loan portfolios. These institutions know that the average home is sold every five to seven years, depending on the area of the country. With escalator clauses fettered by usury laws, and alternative mortgage instruments largely untested, it is clear that the due-on-sale clause is, in a period of apparently uncontrollable inflation, a useful weapon in compelling replacement of an old mortgage with new ones bearing market interest rates. It is myopic for a court *337 to overlook the inflationary forces made evident by the very price of the property sold. [at 309-310; footnotes omitted].
Perhaps the landmark case restricting acceleration under a due-on-sale clause unless impairment of security is shown is Wellenkamp v. Bank of America, 21 Cal.3d 943, 148 Cal. Rptr. 379, 582 P.2d 970 (1978). The Wellenkamp court specifically limited its decision to institutional lenders. Id. at 952, n. 9, 148 Cal. Rptr. at 589, n. 9, 582 P.2d at 976, n. 9. Previous to Wellenkamp, the Federal Home Loan Bank Board (Board) promulgated a regulation giving across-the-board retrospective and prospective recognition to the due-on-sale clause with respect to its use by federal savings and loan associations. 12 C.F.R. § 545, 6-11 (1976) This apparent conflict with the Wellenkamp decision gave rise to a preemption controversy of major significance to the entire mortgage lending industry. Kratovil, supra at 310.
While the federal courts recognized the right of federal savings and loan associations to enforce due-on-sale clauses in cases where, under state law, such clauses were not enforceable or restricted, some state courts refuse to give effect to the board regulations. See 29 N.J. Practice, supra, at 35, 36, n. 86.15. A California state court refused to recognize this preemption of a federal savings and loan association under the board regulation. de la Cuesta v. Fidelity Fed. S. & L. Ass'n, 121 Cal. App.3d 328, 175 Cal. Rptr. 467 (D.Ct.App. 1981). On appeal the case was reversed by the United States Supreme Court which held that the regulation authorizing the due-on-sale clause in federal savings and loan associations preempted state law. Fidelity Fed. S. & L. Ass'n v. de la Cuesta, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). The Supreme Court recognized the determination of the board that due-on-sale clauses are "a valuable and often an indispensable source of protection for financial soundness for Federal associations and for their continued ability to fund home loan commitments." 12 C.F.R. § 566.9(f)(1) (1982), 458 U.S. at 168, 102 S.Ct. at 3030, 73 L.Ed.2d at 684.
*338 Further, the court approved the board's conclusion that the due-on-sale clause is "an important part of the mortgage contract" and that its elimination "will have an adverse effect on the earning power and financial stability of Federal associations, will impair the ability of Federal associations to sell their loans in the secondary market, will reduce the amount of home-financing funds available to potential home buyers and generally will cause a rise in home loan interest rates." Id. at 168, 102 S.Ct. at 3030, 73 L.Ed.2d at 685. The court recognized the correctness of the board's analysis that: it observes that the federal associations' practice of borrowing short and lending long  obtaining funds on a short-term basis and investing them in long-term real estate loans, which typically have a 25-to 30-year term  combined with rising interest rates has increased the cost of funds to these institutions and reduced their income. Exercising due-on-sale clauses enables savings and loans to alleviate this problem by replacing long-term, low-yield loans with loans at the prevailing interest rates and thereby avoid increasing interest rates across the board. The court also validated the board's determination that restrictions like the Wellenkamp doctrine, lengthened the expected maturity date of a lender's mortgages, thus reducing their marketability in the secondary market. Ibid. See footnote 22 for jurisdictions subscribing to the same view as well as the opposite view.
The foregoing is by way of background of the question presently before the court, i.e., whether the Depository Institutions Act of 1982, Pub.L. No. 97-320, 96 Stat. 1505-1507, Title III, Part C, under New Jersey law is applicable to the present case. The act extends de la Cuesta to any state-chartered bank and savings and loan association and specifically applies to mortgages originated before the effective date of this federal statute. § 341(b)(1). A "window" exception has been carved out of the federal preemption for mortgages made or assumed after state action prohibited the enforcement of the due-on-sale clause. Thus, if the Fidelity Land Develop. Corp. v. Rieder & Sons, supra, holding that there must be an impairment of *339 security to enforce the clause is controlling, the act would not be extended to New Jersey for a period of three years. In order to be eligible for this "window", exception, "only judicial decisions by the highest court of the state (or if the highest court has not so decided, a decision by the next highest appellate court resulting in the final judgment if such decision applied state wide) will create a window period for that state." 1982 U.S.Code Cong. & Admin.News 3076.
Since Poydan, Inc. v. Kiriaki and Fidelity Land Develop. Corp. v. Rieder & Sons, were decided within one year of each other, it is held that the due-on-sale prohibition or restriction is an open question in New Jersey and that therefore the Depository Institutions Act of 1982 is presently applicable in New Jersey. This interpretation permits an acceleration of a due-on-sale clause upon transfer without the necessity of proving impairment to the security insofar as banks and savings and loan associations mortgages upon dwellings are concerned. While Poydan, Inc. and Rieder & Sons seemingly hold contrary to each other they may be distinguished. Poydan essentially depended upon the moral integrity, experience and ability of the mortgagor in the operation of a restaurant with a liquor license. Therefore, because of the dependency upon the personal skill and ability of the mortgagor and his moral turpitude in relation to a liquor license, a transfer per se impaired the security of the stock pledge agreement as well as the due-on-sale clause in the mortgage. Rieder did not in fact represent an actual transfer of land but merely a transfer of "paper title" and a retransfer of title. It was more akin to a "suspension and revival" of title. See Sandler v. N.J. Realty Ins. Co., supra. Neither case involved a banking and savings and loan association but rather both cases involved private transactions.
The only prior decision on point concerning a financial institution mortgage is Central Fed. S. & L. Ass'n v. Van Glahn, supra. There Judge Gruccio recognized the full import and necessity of the due-on-sale clause insofar as a banking institution is concerned *340 to protect itself and its members from the inflationary and deflationary conditions in the money market. 144 N.J. Super. at 55. He also pointed out that a mortgage may be prepaid subject to the provisions of N.J.S.A. 46:10B-2. This means that if the interest rate falls the borrower has the privilege of refinancing his debt at a lower rate and paying off the loan with a slight prepayment penalty if it is accomplished within three years of the date of the mortgage and no prepayment penalty thereafter. Conversely, if the money is loaned at a lower rate, the lender risks losing the benefit of increase rates and the due-on-sale clause gives protection to the lender. Id. at 54-55.
Another reason for upholding the preemption of the Depository Institutions Act which permits enforcement of the due-on-sale clause is the national purpose of the act. It is entitled "An Act to revitalise the housing industry by strengthening the financial stability of home mortgage lending institutions and insuring the availability of home mortgage loans." The act is specifically geared to financing institutions for the financing of the purchase of homes. See 1982 U.S.Code Cong. & Admin. News 3074-3075. There it is pointed out that for borrowers, due-on-sale restrictions provide an advantage for existing home owners at the expense of new home buyers. New home buyers pay for due-on-sale restrictions in one of two ways. First, they pay an inflated price for an existing home with a lower interest rate assumable loan. Here the seller inflates the price of the home with an assumable loan to recover losses which result when they take back a second mortgage at a lower than market interest rate; or the price is increased to reflect the value of the assumable loan. Id. at 3074.
Second, the purchaser pays a premium for a new loan for a new home or an existing home with an assumable loan. In this instance lenders charge a premium for new loans in states which restrict due-on-sale clauses because earnings from the new loans must offset older loans (which cannot be turned over when due-on-sale clauses are unenforceable), and originating an assumable loan rather than a loan with an enforceable due-on-sale *341 clause poses a greater risk to the lender, requiring a higher price for the mortgage. Thus, restrictions on due-on-sale clauses generally help existing home owners to the disadvantage of new home buyers. Id. at 3074-3075.
The relationship between the interest rate of mortgages, the purchase price of homes and the availability of mortgage money has been recently recognized by the New Jersey Supreme Court in Donavan v. Bachstadt, 91 N.J. 434, 446-447 (1982). The conclusion that the new federal Depository Institutions Act of 1982 is controlling as to New Jersey mortgages originated by financial institutions is supported by test authority. 29 N.J. Practice, supra, § 26A at 38. This determination is based on the observation that there is no New Jersey constitutional provision, statute or judicial decision of state-wide application which prohibits or restricts enforcement of the due-on-sale clause. Ibid.
§ 341(d) of the Depository Institutions Act contains nine exceptions to the exercise of the due-on-sale clause, none of which are applicable to the present case. It is interesting to note that the case of Egner v. Egner, supra would in all likelihood fall within exception of § 341(d)(5) of the act pertaining to a transfer to a relative resulting from the death of a borrower.
Next to be dealt with is defendant's contention that acceptance by plaintiff of payments from the transferee, Bogusz, after transfer constitutes a waiver or estoppel barring foreclosure. In support of the waiver and estoppel defense defendants rely on the monthly payments from October 1, 1980 to the reconveyance of the property to Easterlin from Bogusz in September of 1982. They contend that for nearly two years, plaintiff received checks from Bogusz and therefore knew or should have known or had notice of the transfer to Bogusz. To refute this, plaintiff submitted an affidavit of the assistant vice-president who has personal knowledge of the payment procedure for mortgage loans. She states that mortgage payment coupons were forwarded to Anita H. Easterlin at 210 Maud Avenue, Brooklawn, *342 New Jersey along with the mortgage escrow analysis in September 1979, September 1980 and September 1981 enclosing coupons, copies of which are attached to the affidavit. These coupons have the amount of the principal and interest payment of $316.85, together with the escrow payment and also have typed on them the name of Easterlin. The affidavit establishes that each payment received by plaintiff, both before and after the date on which the property was transferred to Bogusz, were accompanied by the monthly coupons in the name of Easterlin.
Waiver involves the intentional relinquishment of a known right. West Jersey Title & Guar. Co. v. Industrial Trust, 27 N.J. 144, 153 (1958); Deerhurst Estates v. Meadow Homes, Inc., 64 N.J. Super. 134 (App.Div. 1960). Defendants must establish that plaintiff had knowledge of the rights waived. Brown v. Royal Battery Corp., 131 N.J. Eq. 345, 349 (Ch. 1942). Estoppel, as distinguished from waiver, involves conduct which precludes a person from alleging a default in consequence of his own act. Aron v. Rialto Realty Co., 100 N.J. Eq. 513, 517 (Ch. 1927), aff'd 102 N.J. Eq. 331 (E. & A. 1928).
A waiver must not only be "a clear, unequivocal and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part", but also "A waiver, to be operative, must be supported by an agreement founded on a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting on performance of the contract or forfeiture of the condition." West Jersey Title & Guar. Co. v. Indust. Trust Co., supra, 27 N.J. at 152-153 quoting Aron v. Rialto Realty Co., supra, 100 N.J. Eq. at 518-519.
The checks from Bogusz cannot be said to impute knowledge or notice of a transfer of the mortgaged property to Bogusz. She may have been a relative or other person living with Easterlin, a tenant in the property, a person paying off a loan to Easterlin or some other arrangement between Bogusz and Easterlin for the payment of the monthly mortgage. More important than the payments by checks are the monthly coupons *343 transmitted with the checks. The transmittal of the coupons with the name of Easterlin is an indication, and indeed an assurance, of the continuance of the ownership in the name of the original mortgagee. Questions as to waiver and estoppel are usually questions of intent which are normally a factual determination which may not be disposed of on affidavits and a motion for summary judgment. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 76 (1954); Bilotti v. Accurate Forming Corp., 39 N.J. 184, 204 (1963). Yet in the factual setting in this case the transfer was already an accomplished fact without notice or knowledge to plaintiff and the transfer was disguised each month by the remission of the monthly payment coupons in the name of Easterlin, the original mortgagor. It is therefore held that defenses of waiver and estoppel may not be sustained.
An order may be presented by plaintiff's attorney granting summary judgment in favor of plaintiff and directing that judgment be processed by the Foreclosure Unit in the Office of the Clerk of the Superior Court.
NOTES
[1] Part C of the act is entitled "Preemption of Due-On-Sale Prohibitions."
[2] Paper title. A title to land evidenced by a conveyance or change of conveyance; the term generally implying that such title, while it has color or plausibility is without substantial validity. [Black's Law Dictionary, 5 ed. at 1332].
[3] One authority has suggested that the due-on-sale clause should be enforced according to its expressed terms yet enforcement can still be denied when special circumstances would make acceleration unconscionable. Kratovil, A New Dilemma For Thrift Institutions; Judicial Emasculation of the Due-On-Sale Clause, 12 John Marshall Journal of Practice & Procedure, 299-310 (1979). Unconscionability and principles of fair play have been factors considered by our courts of equity to grant relief to a mortgagor under certain circumstances in mortgage foreclosure proceedings. See Assoc. East Mortgage Co. v. Young, 163 N.J. Super. 315, 330 (Ch.Div. 1978) and cases cited therein.
[4] Compare with Sandler v. N.J. Realty Ins. Co., 36 N.J. 471 (1962), where an insured conveyed to his wholly owned corporation. The Supreme Court held that this did not terminate the title insurer's liability but that the policy was only suspended during the time that the corporation held title and was revived upon reconveyance to the insured under the doctrine of "suspension and revival." [Id. at 481-483]