123 N.J. Super. 112 (1973)
301 A.2d 769
MATTHEW KAMINSKI AND MADELINE KAMINSKI, PLAINTIFFS-APPELLANTS,
v.
LONDON PUB, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 28, 1972.
Decided March 7, 1973.
*113 Before Judges LABRECQUE, KOLOVSKY and MATTHEWS.
*114 Messrs. Klein, Melletz & Klein, attorneys for appellants (Mr. Paul R. Melletz, of counsel and on the brief).
Mr. James J. Florio, attorney for respondent (Mr. Joel B. Korin, on the brief).
PER CURIAM.
Plaintiffs, mortgagees under a second mortgage in the amount of $64,000 on premises known as The London Inn, White Horse Pike, Lindenwold, Camden County, owned by deefndant, instituted this action for foreclosure. The mortgage which was a standard form collateral mortgage contained a clause requiring the mortgagor to keep the building on the premises insured against loss from fire. The clause also provided that "if Mortgagor shall at any time default in furnishing any policy of insurance agreed to be furnished hereunder * * *, Mortgagee may procure policies of insurance insuring its interest * * * and charge all costs and expenses thereof to Mortgagor * * *." Elsewhere in the mortgage was a provision that if the mortgagor defaulted in the prompt performance of any promise, covenant or condition of the agreement for a period of ten days, the mortgagee could call the entire mortgage debt. Reasonable attorney's fees were also to be allowed in connection with any default.
On July 11, 1969 the fire insurance policy on the premises was cancelled for nonpayment of premium. A notice of cancellation was allegedly mailed on June 6, 1969 by the insurer to defendant. No notice of the cancellation was mailed to anyone else, notwithstanding that the policy contained a reference to the fact that The Peoples National Bank of Camden County was holder of the first mortgage on the premises. The policy had covered the premises during the ownership of the London Pub by plaintiffs and was continued in force after the sale of the premises from plaintiffs to defendant. No notice had ever been sent to the insurer stating that plaintiffs held a second mortgage interest in the premises.
*115 Plaintiffs were not notified of the cancellation of the insurance policy for some time after that event when notification came through the first mortgagee.
Judge Wick refused to grant plaintiffs the right to continue with the "extreme remedy of foreclosure." He noted that all payments of interest, principal and taxes had been made promptly to the first and second mortgagees and that the only reason foreclosure was sought here was the "failure to supply the insurance." In rendering his decision, Judge Wick noted that the notice of cancellation had been sent by the insurer only to defendant corporation but that no individual could testify at the trial as to having received that notice. He also noted that both sides became aware of the nonexistence of insurance at approximately the same time and that both sides immediately attempted to place the insurance. He found that it was not until a year and one-half later that even plaintiffs were able to place the insurance. He also found that since plaintiff Matthew Kaminski was the one who had made the sale and set up the method of financing used, plaintiffs had to absorb some of the responsibility for some of the events that ensued. He therefore denied foreclosure.
The record disclosed that the Kaminskis did in fact obtain a policy of insurance after a number of abortive efforts. The policy obtained required a total annual premium of $4,779.64. After paying the premium, plaintiffs demanded reimbursement within ten days from defendant. The amount was not paid but prior to institution of these proceedings defendant was successful in obtaining a policy on its own and informed plaintiffs of this fact. The record also discloses that defendant also offered to pay the premium advanced by plaintiffs prior to the institution of the action. Plaintiffs insisted, however, in prosecuting the foreclosure.
Plaintiffs on this appeal maintain that a literal reading of the mortgage instrument gives them the right, which the court below could not deny them, to foreclose because of the failure of defendant to keep the mortgaged premises *116 insured. We disagree. Generally, a provision in a mortgage granting the mortgagee an option to accelerate the maturity of the mortgage date upon the default in payment of principal, interest, taxes or insurance is a proper contractual stipulation and a mortgagee has the right to insist upon strict observance of such a stipulation, unless the default can be attributed to his conduct. Eisen v. Kostakos, 116 N.J. Super. 358, 366 (App. Div. 1971); Weiner v. Cullens, 97 N.J. Eq. 523, 526 (E. & A. 1925).
Under our cases, default in the payment of taxes or municipal liens may be neutralized if the taxes or liens are paid before the complaint in foreclosure is filed. Williams v. Evenstein, 2 N.J. 60, 63 (1949); Eisen v. Kostakos, above; Haase v. Moser, 120 N.J. Eq. 437 (Ch. 1936), aff'd 121 N.J. Eq. 344 (E. & A. 1937). Default in the payment of interest or principal cannot be so neutralized, however. Haase v. Moser, above, 121 N.J. Eq., at 345. Our research has not disclosed any case in this State which involves the attempt to correct a default under an insurance clause prior to the institution of foreclosure proceedings.
It seems to us, however, that a default in the payment of insurance premiums, or the failure to maintain a policy of insurance on mortgaged premises, is more analogous to a failure to pay taxes or municipal liens when due than to a failure to pay interest or principal when due. Cf. Olshan v. Chrystal, 101 N.J. Eq. 799 (E. & A. 1927). The failure to pay taxes or to maintain insurance does not impair the security of the mortgagee if those defaults are corrected promptly, i.e., before the institution of foreclosure proceedings. On the other hand, a default in the payment of interest or principal is ipso facto an impairment of security and a violation of the principal condition of the mortgage conveyance.
It is apparent that the mortgage security was imperiled through the lack of insurance during the period of time involved. However, no actual impairment of the security ever occurred. In addition, we are satisfied that the *117 record supports the trial judge's implicit conclusion that the failure to maintain the insurance came about through a series of events which were unknown to both plaintiffs and the Morsellis who are principals of defendant corporation. We note, as the trial judge did, that the not inconsiderable payments on the first and second mortgages were made throughout the period without default. We therefore conclude that the Chancery Division judge properly exercised his equitable jurisdiction in refusing the harsh remedy of foreclosure. As was noted by then Chief Judge Cardozo, in his dissent in Graf v. Hope Bldg. Corp., 254 N.Y. 1, 171 N.E. 884, 70 A.L.R. 984, 989 (1930):
There is no undeviating principle that equity shall enforce the covenants of a mortgage, unmoved by an appeal ad misericordiam, however urgent or affecting. The development of the jurisdiction of the chancery is lined with historic monuments that point another course.
The trial judge awarded plaintiffs the sum of $622 plus interest of 6% for a period of six months thereon as damages to plaintiff. That sum represented the earned premium on the policy obtained by plaintiffs which was later cancelled. We find, however, that plaintiffs should have been allowed interest at the rate of 6% for six months on the entire premium paid by them on said policy, plus the amount of $622 which was awarded. The trial judge was correct in refusing to allow an attorney's fee. R. 4:42-9.
The judgment of the Chancery Division is modified, and as modified, affirmed.
KOLOVSKY, J.A.D., (dissenting).
Neither a court of law nor a court of equity may rewrite the contract entered into between a mortgagor and mortgagee. It is therefore essential to recognize exactly what had been agreed to in the mortgage executed by defendant to plaintiffs with respect to fire insurance on the mortgaged property and the payment of premiums for such insurance.
*118 Paragraph 4 of the mortgage provides that the mortgagee shall maintain insurance in force and pay the premium therefor and that
* * * if Mortgagor shall at any time default in furnishing any policy of insurance agreed to be furnished hereunder, * * * Mortgagee may procure policies of insurance insuring its interest * * * and charge all costs and expenses thereof to Mortgagor, adding the amount thereof to the amount due on this mortgage. [Emphasis added]
Further, paragraph 6 of the mortgage provides:
That upon any default in the making of any payments specified in paragraphs herein marked 1, 2, 4 and 11, Mortgagee, at Mortgagor's option, may pay the same, or any of them or any part thereof, and thereupon this mortgage shall be security for any such payments with interest thereon and that the Mortgagor, will, upon demand, repay to Mortgagee such sum or sums, with interest at six per cent per annum from the date of payment thereof by Mortgagee to the date of repayment thereof. [Emphasis added]
Finally, paragraph 7 authorizes the Mortgagee "to elect that this mortgage shall be and become due and payable immediately," if the Mortgagor should fail to correct, within ten days after notice thereof, any default, whether in payment of interest or installment of principal or in the performance of any other obligation imposed on the mortgagor.
The controlling issue in this case is not, as the majority opinion suggests, whether a mortgagor's default in maintaining fire insurance may be neutralized if the insurance is obtained before the complaint in foreclosure is filed. That issue would be significant only if plaintiffs-mortgagees had not procured and paid for the required insurance and if the asserted right to foreclose were based solely on the failure to maintain the required insurance.
Here, however, the mortgagees had exercised the right reserved to them by the mortgage to procure insurance because the mortgagor had not procured and maintained such insurance. Plaintiffs had, on or about June 15, 1971, procured insurance and paid the $4709 premium therefor. By the *119 terms of the mortgage, the payment of $4709 thus made was added to and became a part of the principal secured by the mortgage, with the mortgagor obligated to pay that part of the principal sum of the mortgage upon demand. Cf. Eisen v. Kostakos, 116 N.J. Super. 358, 366 (App. Div. 1971).
Plaintiffs served defendant with a demand for payment of the $4709 shortly after June 15, 1971, but payment was not made, even though sometime after the expiration of the ten days from the time of the demand, there were some settlement negotiations.
Plaintiffs filed their complaint for foreclosure on September 2, 1971, the complaint alleging, among other things, that plaintiffs had demanded payment of the amount of the premium which they had paid and that:
To date the defendant, London Pub, Inc. has not reimbursed the plaintiffs the premiums nor the accrued interest thereon. Plaintiffs have elected that the whole principal sum with all unpaid interest shall now be due.
Even if defendant had sought to neutralize its failure, for more than ten days, to pay the $4709 principal due by tendering payment of that sum before the foreclosure complaint was filed, the default would not have been neutralized. It is settled, as the majority opinion states, citing the pertinent cases including Eisen v. Kostakos, supra, that while
Under our cases, default in the payment of taxes or municipal liens may be neutralized if the taxes or liens are paid before the complaint in foreclosure is filed, * * * Default in the payment of interest or principal cannot be so neutralized.
The controlling default here involved was the default in payment of principal, not the default in maintenance of insurance. Cf. Eisen v. Kostakos, supra, in which the distinction noted was applied in a case where there had been a default in payment of taxes and the mortgagee had paid the taxes. The court observed in upholding the mortgagee's right to foreclose,
*120 A mortgagee who pays taxes which the mortgagor is under a duty to pay is entitled to be reimbursed for the amount paid and may add it to the mortgage debt. [Citing cases]
Further, it appears from the record that there was not even a tender of the $4709 before the foreclosure action was instituted. All that appears in the record is a statement of defendant's attorney that in July 1971, during the course of the unsuccessful settlement negotiations, defendant had offered to pay $3779.
Plaintiffs did eventually in December 1971 and January 1972 receive, from the insurance company which had written the policy they had procured, refunds of premium totalling $4087. (Plaintiffs' policies were cancelled when they learned that defendant had procured an insurance policy effective August 4, 1971. Plaintiffs' insurer acquiesced in a cancellation as of August 4, 1971 even though the request for cancellation was submitted at a much later date.)
The difference between $4709 and $4087, $622, was still unpaid at the time of trial.
On the record here, plaintiffs were entitled to accelerate the maturity of the mortgage debt by reason of defendant's failure to pay the principal installment of $4709 due. In my opinion the court may not deny them their right to foreclose absent a showing, and there is no such showing here, that the default was the result of some unconscionable or inequitable conduct of plaintiffs-mortgagees or that plaintiffs had effectively waived the default.
I would reverse and remand for entry of the judgment of foreclosure which plaintiffs seek.