RICHARD W. SANGUIGNI AND JOAN M. SANGUIGNI, HUSBAND AND WIFE, PLAINTIFFS, v. PHYLLIS SANGUIGNI, MOTHER AND PHYLLIS SANGUIGNI, DAUGHTER.

Superior Court of New Jersey
Chancery Division Atlantic County

Decided September 7, 1984.

*Mark H. Sandson* for plaintiffs (*Hankin, D'Amato & Sandson,* attorneys).

*George Seltzer* for defendants (*Alten, Valentine, Seltzer & Shultz,* attorneys).

GIBSON, J.S.C.

This is a mortgage foreclosure action in which plaintiff has moved for summary judgment. *R.* 4:46–2. Both parties agree that the material facts are not in dispute.

The affidavits indicate that plaintiffs Richard and Joan Sanguigni loaned $53,000.00 to Defendant Phyllis Sanguigni and her daughter. As security for that debt, a note was executed by defendants on October 14, 1982 along with a mortgage on the property known as 2 West Drive, Margate City, New Jersey. Included within the terms of the mortgage is a provision which indicates that upon the request of the lender, the borrower is obligated to forward payments of $\frac{1}{12}$ of the real estate taxes and $\frac{1}{12}$ of the insurance to the lender for a tax and insurance escrow fund.

On July 30, 1983, plaintiffs sent defendants a letter demanding the creation of such an escrow fund. Defendants did not respond and now claim that they did not receive the letter.

Thereafter, on September 12, 1983, plaintiffs instructed their attorney to make another demand for the establishment of the fund. Defendants responded by refusing to comply although they continued to pay the taxes and insurance directly. Although there was also a tender of the mortgage payments, beginning with the September 1983 payment, plaintiffs have refused to cash the checks deeming defendants to be in default.

Based on a provision in the mortgage which permits an acceleration of the full amount of the debt in the event of a default in any of its terms, plaintiffs instituted this foreclosure action. Defendants respond by asserting that plaintiffs have not complied with contractual conditions precedent to acceleration by not requesting the escrow fund personally and by not personally delivering the notice or sending it by certified mail. Defendants also contend that the declaration of default was not made in unequivocal terms. Next, they argue their September 14, 1983 letter of response did not constitute a refusal to pay but simply requested additional information. Finally, although not argued directly, they inferentially suggest that even if there was a breach the relief sought is unwarranted.

Mortgage acceleration provisions are generally enforceable. *Eisen v. Kostakos,* 116 *N.J.Super.* 358 (App.Div. 1971). Although defendants argue that an actual impairment of security is crucial in determining whether an acceleration is permitted the case law is by no means consistent on that and there are some cases to the contrary. *Best v. Katz,* 105 *N.J.Eq.* 655 (Ch.1930); *Weiner v. Cullens,* 97 *N.J.Eq.* 523 (E. & A.1925); *Century Federal Savings & Loan v. Van Glahn,* 144 *N.J.Super.* 48 (Ch.Div.1976); *cf. Fogel v. S.S.R. Realty Associates,* 183 *N.J.Super.* 303 (Ch.Div.1981), *aff'd* 190 *N.J.Super.* 47 (App. Div.1983). Security impairment aside, whether a breach of the mortgage warrants the remedy of foreclosure involves the operation of equitable principles and is subject to the exercise of discretion by the court. *Totowa Savings & Loan Ass'n v.*

*Crescione*, 144 *N.J.Super.* 347, 352 (App.Div.1976); *Kaminski v. London Pub.*, 123 *N.J.Super.* 112 (App.Div.1973).

In *Kaminski v. London Pub.* the court ruled that the remedy of foreclosure could not be invoked for a default in the failure to pay taxes and municipal liens where payment was made prior to the filing of the foreclosure complaint. Since the mortgagor promptly cured the failure to pay taxes and keep insurance current prior to institution of foreclosure proceedings the security of the mortgage was held not to be impaired. In the instant case, these obligations are current and the issue is the failure to establish an escrow for these payments. That failure was not cured prior to the institution of this foreclosure action, nor has it been corrected to date.

In *Pols v. The Strand of Atlantic City*, 136 *N.J.Eq.* 1 (Ch.1944), it was held that a default in the production of tax receipts within the time provided for by an acceleration clause gave the mortgagee the right to demand full payment of the mortgage and to thereafter foreclose. It was noted there that no attempt had been made to tender tax receipts to either the mortgagee or his assignee. The court stated:

> ... that complainant's right to accelerate arose by reason of non-production of the tax receipts in accordance with the terms of the covenant contained in the bond and mortgage and also by reason of the non-payment of water rents before the filing of the bill. [*Id.* at 4]

A like conclusion was reached in *Best v. Katz, supra,* where defendants failed to comply with the terms of the mortgage requiring the production of receipts for the payment of taxes at the time called for in the mortgage. Although the court's reasoning was not elaborated it was held that the complainant had a right to foreclose based solely on the non-production of tax receipts.

> There is no contention that the receipts for the municipal taxes were produced as required by the terms of the mortgage. If the failure to produce the tax receipts is sufficient default to make the principal due, then the complainant is entitled to a decree. The agreement in each of these mortgages was that the mortgagors should produce the said tax receipts at a certain time, and if default should be made in the production in any year of tax receipts, the whole principal debt of said bond and mortgage should, at the option of the mortgagee, become

due and payable, and payment of said principal debt and all interest thereon might be enforced and recovered at once. [105 *N.J.Eq.* at 656–657]

The two decisions above, although at trial level and thus not binding, support the ability of plaintiffs to foreclose based on defendants' failure to abide by the tax and insurance escrow clause or to cure that default prior to the institution of this action. Leaving the equities aside for the moment, none of the points raised by defendants would preclude this result. While the plaintiffs' initial letter seeking creation of an escrow was apparently unsigned, the subsequent demand letter of September 12, 1983 was written by Mark Sandson, their attorney. Although there is no assurance that the original demand letter was received it is clear that defendants had actual notice. Defendants specifically refer to the September 14, 1983 letter in their response. In addition, while plaintiffs' letter of July 30, 1983 may have been equivocal as to declaration of default, the subsequent correspondence of September 12, 1983 was clear. Finally, even if defendants' September 14, 1983 letter is not viewed as a refusal to pay into the tax and insurance escrow, defendants' default was not subsequently cured.

Having thus concluded, however, still leaves open the question of whether a foreclosure decree is an appropriate judicial response. Stated differently, even when one accepts the above reasoning it is difficult not to question the equities of plaintiffs' position. Since all payments are current, clearly there has been no actual impairment of plaintiffs' security. Also, although the right to the creation of the fund appears clear, it cannot fairly be said that it is a provision which is central to the integrity of the contract. Moreover, the escrow requirement is capable of enforcement without resort to a forfeiture. The question thus becomes not whether the contract should be enforced but whether that enforcement should include a foreclosure.

As already indicated, the remedy of foreclosure is equitable in nature and as such is not automatically available to a creditor in the face of every type of contractual breach, no matter how insubstantial. *Kaminski v. London Pub., supra.* Even in the

face of a contractual breach therefore, this court should not be stripped of the ability to apply traditional notions of fairness. The same balancing process should be available to the court whether the equitable relief being sought is specific performance, rescission or, as here, foreclosure.

As a mortagee resorting to a court of equity to enforce its security, a plaintiff is exposed ... to the operation of equitable principles and must submit to an equitable resolution. [*Totowa Savings & Loan Ass'n v. Crescione, supra*, 144 N.J.Super. at 352. See also Justice Cardozo's dissent in *Graf v. Hope Building Corp.*, 254 *N.Y.* 1, 171 *N.E.* 884 (Ct.App.1930) ].

In balancing the equities here, it is the judgment of the court that although plaintiffs are entitled to the enforcement of this contract and that right includes the ability to demand an escrow fund for taxes and insurance, the appropriate equitable response is to specifically enforce that provision, not to declare a forfeiture. An order will therefore be entered requiring compliance with the above within 30 days. Failing compliance a judgment of foreclosure will be entered.