687 A.2d 1039

SOVEREIGN BANK, FSB, AS SUCCESSOR-IN-INTEREST TO JERSEY SHORE SAVINGS AND LOAN ASSOCIATION, PLAINTIFF–RESPONDENT, v. CHRISTOPHER J. KUELZOW AND ANN L. KUELZOW, HIS WIFE, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 7, 1997—Decided February 4, 1997.

188

Before Judges DREIER, NEWMAN and VILLANUEVA.

*Thomas Daniel McCloskey* argued the cause for appellants.

*Brian W. Kincaid* argued the cause for respondent (*Fein, Such, Kahn & Shepard*, attorneys; *Mr. Kincaid*, of counsel and on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

Defendants, Christopher J. Kuelzow and Ann L. Kuelzow, appeal from a post-foreclosure judgment order refusing to enjoin delivery of a deed or to set aside a sheriff's sale of their residential property. Defendants also claim that the judge mistakenly de-

clined to order a fair market value hearing to establish the excess value received by plaintiff, Sovereign Bank, when it obtained the property as a result of a $100 bid at the sheriff's sale. The property was described at oral argument before us as five acres comprising several lots of prime residential real estate on a bluff overlooking Sandy Hook, on which was constructed a 6500 square foot single-family tudor residence. Defendants purchased the property in 1986 with plaintiff's predecessor having been given a first mortgage. The balance due as of May 1994 was slightly in excess of $207,000, but with interest, costs and tax advances, the foreclosure balance was approximately $226,000.

Defendants allege that in 1989, and for each year through 1994, they obtained a casualty policy from Aetna Casualty & Surety Company. This homeowners policy covered the dwelling for $800,000, other structures for $80,000, and personal property for $400,000. There was additional coverage of $160,000 for loss of use. Payment to defendants was due sixty days after proof of loss, after a $500 deductible. Defendants had obtained various additional coverages, including a home replacement cost guarantee endorsement guaranteeing coverage for full replacement costs of the dwelling so long as the terms of the policy were met even if the replacement costs exceeded the $800,000 face amount of the policy.

On March 13, 1993, defendants' home suffered substantial damage caused by a record Atlantic storm on that date which added to possible damages caused by a similar storm of December 11, 1992. The principal physical damages were the collapse of a sub-basement foundation; a resulting shifting of the house from side to side; cracking and distress to the roof and roofing system as well as masonry support piers, chimneys and plaster walls of rooms; resulting damage to interior framing, flooring and foundation as well as structural supports; and resultant damage to trees, shrubs, lawns and plantings. The house became unsafe to live in, and defendants contend that the structure was a total loss, forcing them to seek interim housing elsewhere. They duly submitted

their claim to Aetna in early April 1993, and spent in excess of $50,000 to brace, reinforce and otherwise repair the dwelling to mitigate against further damage.

Aetna, however, on June 29, 1993 denied defendants' claims for benefits under their policy. Defendants soon thereafter filed a declaratory judgment action against Aetna in Monmouth County, and at approximately the same time plaintiff commenced this foreclosure action. In addition, defendants' second mortgagee, Beneficial Mortgage Company, brought an action against defendants on their note and in that action also made a claim against Aetna, presumably asserting Beneficial's rights as a secondary loss payee under the casualty policy. Summary judgment was entered against defendants in favor of Beneficial in the amount of $168,396. The judge in that suit, however, stayed execution pending resolution of the claim in the collateral insurance action.

Unlike the judge in the Beneficial action, the judge in plaintiff's foreclosure suit declined to stay the foreclosure action pending the result in the insurance litigation. Even though the insurance suit was to be specially managed and given a preemptory trial listing, it has now been pending for over three and a quarter years without a hearing. There have been substantial delays, as we explain later.

Plaintiff proceeded in its foreclosure action and final judgment was entered in its favor on May 23, 1994. Defendants attempted to challenge the propriety of the judgment and to stave off a sheriff's sale. Assuming that the insurance litigation would be concluded within a short time, defendants entered into an agreement embodied in a consent order of March 22, 1995. The agreement provided for the adjournment of the sheriff's sale until December 11, 1995, providing defendants made certain payments, and defendants also agreed to waive their defenses to the foreclosure action. Under the agreement, defendants made payments to plaintiff equivalent to the former mortgage payments, but as we will explain, the insurance action still was not tried by the expiration of the period covered by the consent order.

Defendants had understood that the adjournments of the sheriff's sale would continue through December 18, 1995, notwithstanding the December 11, 1995 date in the order itself. Defendants' attorney called plaintiff's attorney on the morning of December 11 to attempt to negotiate a further extension of the foreclosure sale due to the lack of progress in the insurance litigation. During that call, defense counsel was informed, allegedly for the first time, that the sale had been scheduled on that day, not a week hence, and in fact would proceed at 2:00 p.m. Plaintiff insisted, and the trial judge appears to have agreed, that the consent order itself was sufficient notice of the date of the sale and that plaintiff's counsel had no obligation to give defendants' attorney even a courtesy notice that plaintiff would be proceeding. Plaintiff's attorney did make the offer, however, that for a $4000 payment plaintiff would adjourn the sale for an additional month. Because there was little likelihood that the insurance case would be concluded within that month and because they felt the payment demanded was unreasonable, defendants declined. Defendants' attorney, however, attended the sale and advised those present, including potential bidders, that the property was the subject of litigation and that defendants were contesting the propriety of the sale and would move to have the sale set aside in order to protect their rights. The potential bidders bowed out, and plaintiff as the sole bidder purchased the property for $100. In the interim, defendants had attempted to contact the court to obtain an order staying the sale, but the court would not entertain the application.

We understand that defendants offered at the time of the sale, and still offer, to pay plaintiff its contractual carrying charges on the mortgage, principal, interest and taxes through the anticipated conclusion of the insurance litigation, but that this offer was and continues to be declined. Even after the sheriff's sale, defendants in good faith continued their payments on the underlying mortgage, and at least through March 1996 offered to continue to do so in the hopes that the Aetna case would be concluded.

The insurance litigation now has a trial date for March 1997. The earlier adjournments have been explained with reference to the judge to whom the matter had been assigned being required first to try a substantial environmental case and then to try another celebrated insurance case which was to be retried after a mistrial.

Soon after the sale, defendants obtained an order for plaintiff to show cause why defendants' equity of redemption should not be continued and the sheriff's deed not delivered, conditioned upon their tender to plaintiff on a monthly basis of all carrying charges on the mortgage, all abiding the outcome of the insurance litigation. Defense counsel informed the judge that plaintiff (apparently as the first loss payee of the insurance policy) had participated in a global settlement conference in the insurance litigation and at that time stated that it had an informal appraisal of at least $525,000 for the subject property, well over double the amount of the mortgage debt with all charges added. We understand that plaintiff has since disavowed this alleged appraisal, but represented to us at oral argument that the fair market value of the property is most probably in excess of the amount due.

The Chancery judge requested extensive briefing for the return date of defendants' order, including on defendants' claim that there should be a fair market value hearing notwithstanding plaintiff's disclaimer of any intention to proceed with a deficiency claim against defendants.[1] What defendants apparently seek by this request is the mirror image of a fair market value hearing held when the property is valued at less than the debt. Defendants claim that plaintiff should be responsible to them for the amount that the fair market value of the property it has received exceeds the balance due to plaintiff. If this cannot be obtained from the court, defendants noted at oral argument that they seek at the very least an accounting to them of any profits plaintiff

---

[1] We assume that this disclaimer also would include no intention to seek a portion of the insurance proceeds if defendants prevail against Aetna.

receives above the total amount it would have received on the mortgage when it disposes of the property.

We first note that a mortgagor has no right to an accounting for a surplus when a mortgagee bids in at a nominal value and then does not seek a deficiency action against the mortgagor. All that can be claimed is that the sale be overturned for some irregularity or for good cause or, as we note here, that the delivery of the deed should be withheld on equitable principles. Inadequacy of price is merely one element in the determination of whether to set aside the sale. *Crane v. Bielski*, 15 *N.J.* 342, 348–49, 104 *A.*2d 651 (1954).[2]

The trial judge denied the relief requested by defendants, except that plaintiff was directed to supply defendants with a copy of its RESPA statement when the real estate was eventually sold. Defendants would thus be able to proceed with any legal action they deemed appropriate. Plaintiff was also given ninety days to commence a deficiency action or be thereafter barred. No such action was filed.

The trial judge was particularly impressed with the fact that the parties had resolved their differences at the time the consent order was entered, and that there was no mention in that order

---

[2] This principle is recognized in Section 8.3 of the current draft of the *Restatement of Property (Mortgages)* by The American Law Institute:

Adequacy of Foreclosure Sale Price

(a) A foreclosure sale price obtained pursuant to a foreclosure proceeding that is otherwise regularly conducted in compliance with applicable law does not render the foreclosure defective *unless the price is grossly inadequate.*

(b) Subsection (a) applies to both power of sale and judicial foreclosure proceedings.

[*Restatement of Property (Mortgages)* § 8.3 (Tentative Draft No. 5, 1996) (emphasis added).]

An analogous rule is applied in the area of the sale of personal property to satisfy a security interest. *See N.J.S.A.* 12A:9–504(3); Donald J. Rapson, *Repurchase (of Collateral?) Agreements and the Larger Issue of Deficiency Actions: What Does Section 9–504(5) Mean?*, 29 *Idaho L.Rev.* 649 (1992).

conditioning it upon conclusion of the Aetna litigation. The judge stated:

> That order effectively bought them nine months' time from March through December of 1995 to do whatever they wanted to do. It isn't conditioned upon the litigation with AETNA being resolved. There's nothing like that in the terms of the order. It bought them time. And maybe in time they could have gone out and borrowed money or maybe in time they could have hit the lottery or done whatever. But it's not at all conditioned upon the litigation with AETNA.

The judge was singularly unimpressed with the interrelationship between the foreclosure action and the insurance litigation. He stated:

> And I have to say right up front that I would never do something like that [extend the order until resolution of the AETNA litigation]. That would, you know, turn the world upside down, because in all litigation, the basic goal is finality. This is litigation. In a foreclosure action there has been finality already.

We disagree with this analysis. While one goal of litigation is finality, the basic goal is a just resolution of the dispute. Fairness takes precedence over the closing of cases. Were it not for the fact that *R.* 4:64-5 prohibits the joinder of a foreclosure action "with non-germane claims against the mortgagor or other persons liable on the debt," the claims in the insurance litigation would have been tried with the foreclosure action, at least so long as defendants had not defaulted in their payments of principal, interest and taxes. The mortgage itself contemplated that the insurance proceeds would be applied to rebuild the mortgaged premises, and thus there would have been no default had the insurer not disclaimed. Since the suits could not be consolidated, the foreclosure matter could have been stayed, as was the Beneficial suit on the second mortgage, so long as plaintiff was protected by the continuing payments offered by defendants. We note that the same judge who was assigned the insurance litigation had stayed the Beneficial action.

The true culprit is neither the plaintiff who seeks to enforce its contract rights nor the insurer who claims a lack of coverage. Certainly defendants are not to blame. They maintained the maximum coverage they were offered by a policy that was acceptable to both them and plaintiff; they have continually offered to

keep up the payments on the mortgage until the insurance suit is resolved; and they have looked to the courts to vindicate their rights. If the courts had disposed of the insurance claim with reasonable alacrity, defendants would have won or lost that case before the foreclosure issue reached this stage. If defendants prevailed, they would have paid plaintiff from the insurance proceeds or the property would have been rebuilt and plaintiff would have continued to pay the mortgage. If, however, the insurance action was decided in Aetna's favor, defendants would have absorbed their monumental loss or attempted to seek legal redress elsewhere. Unfortunately, prioritized coordination of the Aetna and foreclosure litigation was unsuccessful.

The Chancery judge, however, presides over a court of equity. The foreclosure action, although already the subject of a judgment, is not totally concluded until the defendants' equity of redemption is cut off by the delivery of the sheriff's deed. *See Hardyston Nat'l Bank v. Tartamella*, 56 *N.J.* 508, 513, 267 *A.*2d 495 (1970) (holding that because "[t]he right to redeem was devised by equity to protect [the mortgagor] from the forfeiture of his title ... the just course is to permit the mortgagor to redeem within the ten-day period fixed by *R.* 4:65–5 ... and until an order confirming the sale, if objections are filed under the rule"); *R.* 4:65–5. So long as the matter was still pending before the court, the principles of equity govern its progress.

Foreclosure is a discretionary remedy. *Sanguigni v. Sanguigni*, 197 *N.J.Super.* 505, 507, 485 *A.*2d 332 (Ch.Div.1984); *Totowa Sav. & Loan Ass'n v. Crescione*, 144 *N.J.Super.* 347, 351, 365 *A.*2d 713 (App.Div.1976); *Kaminski v. London Publ'g*, 123 *N.J.Super.* 112, 117, 301 *A.*2d 769 (App.Div.1973). In this case, the courts obviously did not effectively coordinate this case with the insurance litigation. The effect of the Aetna action should have been apparent to the trial judge. We do not see the interests of justice being served if plaintiff is able to capitalize on the failure to move the Aetna case by obtaining a windfall. In the process, defendants' equity in their home above any potential

insurance proceeds would be lost.[3] Plaintiff could easily have been maintained as the successful bidder at the sale, but with the deed not delivered, until the insurance litigation is concluded.

Plaintiff must, of course, receive its full contract payments until that date, thus suffering no harm. The equitable maxim that "he who seeks equity must do equity" has application here. Plaintiff has sought the equitable remedy of foreclosure. Defendants seek a forbearance against conditions not of their making. Of course the storm that destroyed their home cannot be ascribed to plaintiff, nor can the long delay in resolving the Aetna litigation. But we do not lose sight of the fact that the insurance policy supplied by defendants to satisfy their mortgage obligation to plaintiff had been accepted by plaintiff as a multi-peril comprehensive instrument, but with an ambiguity or possibly an exclusion not recognized by it or defendants. This is being resolved in the insurance litigation. Equity certainly would not demand that plaintiff forego its right of foreclosure if the policy is finally construed against defendants, but it is not too much to ask that plaintiff be denied the final delivery of the sheriff's deed foreclosing defendants' equity of redemption until the Aetna case is resolved, provided plaintiff is made whole in the interim.

Such a resolution is not without precedent. In *Brinkley v. Western World, Inc.*, 275 *N.J.Super.* 605, 610, 646 *A.*2d 1136 (Ch.Div.1994), *aff'd o.b., and modified on other grounds*, 292 *N.J.Super.* 134, 678 *A.*2d 330 (App.Div.1996), involving a foreclosure of tax sale certificates, the court noted:

> Strict enforcement of [the tax foreclosure law] is not only contrary to decisional authority, it is contrary to general equitable principles. "The rule seems to be that where under a statute providing for tax sales, a deed delivered will be presumptive evidence of title, equity may intervene to either prevent the sale, or if the deed be delivered, to cancel it." *Cahill v. Town of Harrison*, 87 *N.J. Eq.* 524, 526, 100 *A.* 625 (Ch.1917).

---

[3] The usual remedy of refinancing is not readily available to defendants with the property in its damaged condition, a second mortgage on the premises, and an unsure action pending for the insurance proceeds.

The court also relies upon the general equitable principles which apply to the remedy of foreclosure. Foreclosure is a harsh remedy and equity abhors a forfeiture. A court of equity may invoke its inherent equitable powers to avoid a forfeiture and deny the remedy of foreclosure. *Sanguigni v. Sanguigni,* 197 *N.J.Super.* 505, 507, 485 *A.*2d 332 (Ch.Div.1984) (a determination as to whether an action "... warrants the remedy of foreclosure involves the operation of equitable principles [and] ... is subject to the exercise of discretion by the court"). *See also Kaminski v. London Pub.,* 123 *N.J.Super.* 112, 117, 301 *A.*2d 769 (App.Div.1973).

The court there determined that it should invoke its equitable power and set aside the tax sale certificate because the plaintiff seeking its foreclosure was not without other remedies. *Id.* at 613, 646 *A.*2d 1136.

For this interim period plaintiff in our case also is not without other protection. It maintains the security of the real estate which it has acknowledged as likely to be of a value in excess of the amount due. It will be paid its principal, interest and taxes in the interim, and will either be paid in full by Aetna if defendants prevail or will receive its deed and then be able to proceed to a commercial sale if defendants are unsuccessful. Such equitable restraint on the part of plaintiff is not too great a demand as a condition for the equitable remedy of foreclosure.

Defendants have also appealed from the denial of their application for a ruling that a fair market value hearing must be held at this time. As noted earlier, they are asking for a ruling that a residential mortgagee must account for its profits if it buys in at a foreclosure sale for a nominal cost and does not seek a deficiency judgment against the mortgagor. The issue is not before us at this time, and we will not decide the question in the abstract. We note that we have treated a similar issue in a commercial context. *See National Community Bank of N.J. v. Seneca–Grande, Ltd.,* 202 *N.J.Super.* 303, 310–11, 494 *A.*2d 1043 (App.Div.1985).

The order denying a temporary stay of the delivery of the sheriff's deed is reversed, and the matter is remanded to the Chancery Division for further proceedings in accordance with this opinion.