NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4084-18T3

CARRINGTON MORTGAGE
SERVICES, LLC,

      Plaintiff-Respondent,

v.

DAVID MOORE and
ELIZABETH MOORE,

      Defendants-Appellants,

and

HUDSON UNITED BANK n/k/a
TD BANK, MARY DUNBAR,
and STATE OF NEW JERSEY,

      Defendants.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **June 10, 2020** |
| **APPELLATE DIVISION** |

Submitted May 26, 2020 – Decided June 10, 2020

Before Judges Sabatino, Sumners and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. F-007711-18.

John J. Hopkins, III, attorneys for appellants (John J. Hopkins III, on the brief).

Law Offices of Shapiro & DeNardo, LLC, attorneys for respondent (Elizabeth L. Wassall, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

Defendants, David and Elizabeth Moore, appeal the Chancery Division's April 12, 2019 order denying their motion to vacate a default judgment of mortgage foreclosure entered against them concerning their house in Port Monmouth.   We affirm.

I.

The Moores bought the house in March 2010, financed with a purchase money mortgage of $152,192 from First Interstate Financial Corp ("First Interstate").   In July 2012, First Interstate assigned the mortgage to Bank of America, N.A.   Eventually, the mortgage was assigned, in turn, to the plaintiff in this case, Carrington Mortgage Services, LLC ("Carrington").

On October 29, 2012, the house was severely damaged by flooding during Superstorm Sandy. The local building inspector determined the damage to the house was so extensive that it needed to be rebuilt.

In February 2015, the Moores defaulted on their mortgage payments. They have not made any payments in the ensuing five years.

The Moores attempted to get payment from their flood insurance company and their homeowners' insurer. When those efforts failed to produce a satisfactory recovery, the Moores filed a lawsuit in April 2015 in the United States District Court for the District of New Jersey against the two insurance companies.

The Moores also named as a co-defendant in their federal action Bank of America, Carrington's predecessor in interest. Among other things, the federal complaint claimed the bank should be discharged from its right to receive mortgage payments from the Moores, and instead only get recovery from whatever insurance proceeds were payable. The Moores also sought from the bank a refund of mortgage payments that they had previously made, arguing that a so-called "novation of contract" following the superstorm had relieved them of their duty to pay.

The bank and the two insurers each moved to dismiss the federal lawsuit. On April 22, 2016, District Judge Madeline Cox Arleo granted the bank's motion.[1]

---

[1] Appellants' counsel has only furnished us with a portion of the materials from the federal litigation. Counsel did supply a copy of the April 22, 2016 order dismissing the claims against the bank. However, counsel did not supply us

In addition, the District Judge granted summary judgment dismissing the Moores' claims against their homeowners' insurer, finding those claims were time-barred under the terms of the policy.[2] Later, in 2018, the District Judge also granted summary judgment to the flood insurance company, likewise concluding those claims were time-barred.[3] The Moores apparently did not appeal those orders.

In April 2018, Carrington filed the present mortgage foreclosure action. The Moores did not respond to the foreclosure complaint, or Carrington's

---

with a transcript or copy of the judge's reasoning, or a copy of the bank's motion papers specifying the grounds on which it had based its dismissal motion.

[2] Moore v. Farmers Mut. Fire Ins. Co. of Salem Cty., et al, No. CV 15-6418, 2016 WL 11220847, at *1 (D.N.J. Apr. 20, 2016). We take judicial notice of this opinion pursuant to N.J.R.E. 201, and we cite to it pursuant to the exception of Rule 1:36-3. The opinion reflects that, before filing suit, the Moores did obtain a modest net recovery of $439.97 ($1,439.97, minus a $1,000 deductible) from the homeowners' insurer. Ibid.

[3] Moore v. Farmers Mut. Fire Ins. Co. of Salem Cty., et al., No. CV 15-6418, 2018 WL 10151931, at *1 (D.N.J. Sept. 17, 2018). We likewise take judicial notice of this related opinion. The opinion reflects that the flood insurer did issue a pre-suit check jointly to the Moores and the bank in March 2013 for the sum of $64,611.93. Ibid. We are not advised how much, if any, of that payment was received by the Moores or used for repairs, and how much, if any, was taken by the bank and applied to the outstanding mortgage loan.

4

summary judgment motion and defaulted. Final judgment was entered against them on December 11, 2018.

The Moores made two unsuccessful emergent attempts in the trial court to stay the Sheriff's sale, but it nevertheless went forward. The property was acquired at auction by Carrington in March 2019.

The Moores moved under Rule 4:50-1 to vacate the default judgment. They chiefly argued that, under the entire controversy doctrine, Carrington cannot litigate the foreclosure case in state court because its predecessor, Bank of America, was a party in the earlier federal action. They contended the bank was obligated to file a counterclaim against them in the federal case to protect its rights but did not do so. They argued the entire controversy doctrine thereby precludes the mortgagee from filing suit for foreclosure in state court.

After hearing oral argument, Judge Katie A. Gummer issued a lengthy oral decision rejecting the Moores' contentions and denying their motion to set aside the foreclosure judgment.

## II.

On appeal, the Moores reiterate their contention that Carrington's right to pursue a foreclosure action in this state court is barred by the previous federal

5

litigation concerning insurance coverage.[4]  We reject that argument, substantially for the wise reasons detailed in Judge Gummer's bench opinion. We amplify the judge's analysis with several observations.

In general, the disposition of a motion under Rule 4:50-1 to vacate a judgment is entrusted to the discretion of the trial court.  Hodgson v. Applegate, 31 N.J. 29, 37 (1959).  The trial court's decision to grant or deny such a motion should not be disturbed on appeal unless it represents a "clear abuse of discretion."  Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283-84 (1994); Orner v. Liu, 419 N.J. Super. 431, 435 (App. Div. 2011).  The judge in this case did not misapply her discretion in denying relief to the Moores, because she correctly recognized that their invocation of the entire controversy doctrine is critically flawed.

The entire controversy doctrine, as codified in Rule 4:30A, generally requires parties to an action to raise all transactionally related claims in that

---

[4] The Moores also raised an argument in their reply brief below asserting that the foreclosure complaint was not properly served upon them.  Judge Gummer held it was improper to raise this argument for the first time in the reply brief and, moreover, there was no "certification of someone with personal knowledge as required under Rule 1:6-6."  We agree that their "unsigned, unsupported" assertion of improper service is inadequate and accordingly reject this barely asserted argument on appeal.

A-4084-18T3

same action. As our Supreme Court recently noted, the "doctrine 'seeks to impel litigants to consolidate their claims arising from a single controversy whenever possible.'" Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 98 (2019) (quoting Thornton v. Potamkin Chevrolet, 94 N.J. 1, 5 (1983)). "The doctrine serves 'to encourage complete and final dispositions through the avoidance of piecemeal decisions and to promote judicial efficiency and the reduction of delay.'" Ibid. (quoting Wadeer v. N.J. Mfs. Ins. Co., 220 N.J. 591, 610 (2015)).

Subject to equitable considerations, the doctrine disfavors successive suits regarding the same controversy. See DiTrolio v. Antiles, 142 N.J. 253, 267 (1995). Therefore, when a party fails to assert a claim that the entire controversy doctrine required be joined in an action, the court has the authority to bar that claim. R. 4:30A.

Even so, "the boundaries of the entire controversy doctrine are not limitless. It remains an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases." Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009) (quoting Oliver v. Ambrose, 152 N.J. 383, 395 (1998)). As such, "the polestar for the application" of the doctrine is "judicial fairness," and "a court must apply

7

the doctrine in accordance with equitable principles, with careful attention to the facts of a given case." Dimitrakopoulos, 237 N.J. at 114 (quoting K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 74 (2002)).

The doctrine should not be applied "where to do so would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy and efficiency." Dimitrakopoulos, 237 N.J. at 114 (quoting K-Land, 173 N.J. at 70). When analyzing fairness, "courts should consider fairness to the court system as a whole, as well as to all parties." Wadeer, 220 N.J. at 605.

The doctrine applies to successive suits with related claims. DiTrolio, 142 N.J. at 267. "In determining whether successive claims constitute one controversy for purposes of the doctrine, the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." Ibid. It is the factual context "giving rise to the controversy itself, rather than a commonality of claims, issues or parties, that triggers the requirement of joinder to create a cohesive and complete litigation." Mystic Isle, 142 N.J. at 323 (citing DiTrolio, 142 N.J. at 267-68).

The court, not the parties, retains the ultimate authority to control the joinder of parties and claims. Id. at 324. Application of the entire controversy

8

doctrine is "'left to judicial discretion based on the factual circumstances of individual cases.'" Oliver v. Ambrose, 152 N.J. 383, 395 (1998) (quoting Brennan v. Orban, 145 N.J. 282, 291 (1996)). The doctrine's joinder requirements may be relaxed on the grounds of "equitable considerations." Id. at 395-96.

The impact of the entire controversy doctrine is more limited in the context of foreclosure actions. As Rule 4:64-5 instructs:

> Unless the court otherwise orders on notice and for good cause shown, claims for foreclosure of mortgages shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt. Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane claims shall include, but not be limited to, claims on the instrument of obligation evidencing the mortgage debt, assumption agreements and guarantees. A defendant who chooses to contest the validity, priority or amount of any alleged prior encumbrance shall do so by filing a cross-claim against that encumbrancer, if a co-defendant, and the issues raised by the cross-claim shall be determined upon application for surplus money pursuant to R. 4:64-3, unless the court otherwise directs.
>
> [R. 4:64-5 (emphasis added).]

In applying these principles, the trial court first observed that it had not been provided with the note for the property, the insurance policies at issue in the federal lawsuit, any motion papers from that case, or any documents

9

describing the court's decision to grant summary judgment to any of the parties. The court therefore reached its decision on the only papers before it, i.e., the Moores' federal complaint and the federal court's dismissal order.

The trial court did recognize that the entire controversy doctrine conceivably could apply to a federal action. See, e.g., Rycoline Prod., Inc. v. C & W Unlimited, 109 F.3d 883, 887 (3d Cir. 1997) ("A federal court hearing a federal cause of action is bound by New Jersey's Entire Controversy Doctrine, an aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act."). However, based on the contents of the Moores' complaint, the trial court concluded that the doctrine did not apply in this case.

The court found that the claim against Carrington's predecessor in interest was "as a direct defendant for a direct claim for reimbursement of mortgage payments" already paid on the damaged home. It held "[t]here's no claim in that Federal lawsuit that [the mortgagee] had any kind of an obligation to bring or pursue an insurance claim against the insurance companies." There was no evidence that it was the mortgage-holder's responsibility to pursue these insurance claims.

The trial court further noted the Moores had not cited any case law or other legal support for their argument that a bank was required to bring a

foreclosure action in a federal proceeding or, in the alternative, that "the bank had an obligation to attempt to obtain insurance benefits." The court expressed doubts about a federal court's willingness to exercise jurisdiction over a foreclosure case. It concluded that the allegations in the present state foreclosure case "simply do not arise out of the transactional circumstances at issue in the Federal case."

We recognize that, in some circumstances, a mortgage foreclosure action may be brought in federal court under 28 U.S.C. § 1332 diversity jurisdiction. Nat'l City Mortg. Co. v. Stephen, 647 F.3d 78, 80 n.2 (3d Cir. 2011), as amended (Sept. 29, 2011) (observing that such federal cases had become "more common due to congested state court dockets" following the 2008 financial crisis). Federal courts also may hear claims related to foreclosures under 28 U.S.C. § 1331 federal question jurisdiction, where the mortgagor raises a claim under federal law. See, e,g., St. Clair v. Wertzberger, 637 F. Supp. 2d 251, 253 (D.N.J. 2009) (finding federal question jurisdiction where mortgagor raised claims under federal law in defense of pending state foreclosure proceeding).

Even where jurisdiction is appropriate, federal courts may decline to adjudicate foreclosure actions for sound jurisprudential reasons. Id. at 255 (dismissing a foreclosure claim asserted in federal court on grounds of

11

abstention where it would unreasonably interfere with a parallel, ongoing action in state court).

We share with the trial court substantial doubts that the federal court would have exercised jurisdiction over a mortgage foreclosure claim by the bank if it had chosen to plead it as a counterclaim against the Moores. We are unpersuaded that such a counterclaim would have been compulsory under Federal Rule of Civil Procedure 13(a), since the Moores' lawsuit concerned their insurers' denial of their claims for benefits and not their unpaid mortgage loan. We are also doubtful of the jurisdictional basis that could support such a counterclaim, since the Moores did not bring their lawsuit under diversity jurisdiction and there is no federal question of law implicated by the Moores' claim against Bank of America based on the mortgage contract.

But, even assuming federal jurisdiction over the mortgage foreclosure claims hypothetically was present, we discern no legal or equitable basis to hold that the foreclosure claims had a sufficient transactional nexus to the Moores' insurance disputes to require them to be asserted in the federal case.

The series of dismissal orders from the District Court reveals that none of the Moores' claims in the federal lawsuit were viable. There was no need to latch onto those weak and rather short-lived federal claims a viable state-law

foreclosure case that could be properly litigated in the Superior Court. This state court, not the federal court, has day-to-day expertise in foreclosure matters. It would make little practical sense to force the bank to bring its foreclosure claims in that other forum.

As the trial court noted, the Moores' federal complaint itself does not appear to suggest that there is a transactional relationship between a potential foreclosure and the insurance claims. The Moores' specific complaint against the mortgage holder did not allege it was required to seek payment from the insurance companies. Instead, the federal complaint asserts that the destruction of the home voided the mortgage contract, and that the Moores therefore were owed mortgage payments already made after they had been "relieved of that obligation." The remainder of the complaint is focused on the insurance providers. In fact, in their present brief the Moores assert they brought suit to compel the insurance companies to "to pay the mortgage and remaining damages." The only relationship between the mortgage holder and the insurance companies is the assertion that the mortgage holder was a named recipient of the insurance policy, and that the mortgage company paid monthly insurance premiums from the monthly payments the Moores made on the mortgage. Although the mortgage holder could be joined to dispute the insurance claims,

the Moores make no other arguments that the insurance companies were obliged to pay the mortgage holder, or that the mortgage holder was required to compel them to use the allegedly deficient insurance proceeds to pay off the mortgage.

At best, the mortgage holder might well be precluded from pursuing claims under the insurance policies in a subsequent action. The absence of any stated relationship in the federal complaint between the claim against the mortgagors and the claims against the insurance companies suggests that, in fact, there was no transactional relationship between these claims.

The Moores' arguments in this appeal crucially depend upon the contract between themselves and the lender. There appear to be at least two distinct arguments: (1) the mortgage loan contract was a novation, or was void, after Superstorm Sandy; and (2) the lender had a duty to seek the insurance proceeds under either common law principles or the contract itself, and the failure to do so precludes its successor from bringing a subsequent foreclosure action. We reject both of those assertions.

The first assertion is that when Superstorm Sandy destroyed the property, it either constituted a novation in the mortgage contract or constituted changed circumstances sufficient to void the contract. The Moores argue that, because of the storm damage, they were no longer required to pay the mortgage, and that

therefore the mortgage holder was obligated to seek mortgage payments from the insurers. These contentions are without merit.

The Moores' argument that there was a "novation" is clearly incorrect. A novation is "a type of substituted contract that has the effect of adding a party, either as obligor or obligee, who was not a party to the original duty." Restatement (Second) of Contracts § 280 (Am. Law. Inst. 1981). There is no claim or evidence that a substitute contract between any of the parties was ever made, nor an explanation for how Superstorm Sandy would be the triggering event for a new mortgage contract.

Furthermore, the Moores' arguments are squarely repudiated by our opinion in Sovereign Bank, FSB v. Kuelzow, 297 N.J. Super. 187 (App. Div. 1997). In that case, a mortgagor's home was destroyed in a storm. The mortgagors sought to recover insurance payments to rebuild the property and pay off the mortgage but, through no fault of their own, the insurance case was delayed for years. Id. at 196-97. In the meantime, the mortgagee successfully pursued a foreclosure action. This court delayed the final delivery of the sheriff's deed, and the termination of the homeowners' equity of redemption, to allow the defendant mortgagors time to conclude their lawsuit against the insurance providers. Id. at 197-98. Notably, the court emphasized that

regardless of the outcome of the insurance dispute, the mortgage holder "must, of course, receive its full contract payments until that date, thus suffering no harm." Id. at 197.

The destruction of the mortgagor's home in Kuelzow did not affect the plaintiff bank's right to the mortgage debt or its right to foreclose. Principles of equity only allowed the mortgagors a fair opportunity to obtain money that could allow them to pay off the default. Ibid. The same principle applies here—the destruction of the Moores' home does not preclude Carrington from enforcing the obligations of the mortgage contract against them. Carrington was entitled to the balance of the mortgage payments, and could pursue foreclosure if those payments were not met.

The mortgage contract itself bears this out. It specifically states that, in the event of loss or damaged property, the mortgage holder (Carrington or its predecessors) can apply insurance proceeds either towards repairs or to the balance of the mortgage, but that "[a]ny application of the proceeds to the principal shall not extend or postpone the date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments." Paragraph Two, in turn, covers monthly "taxes, insurance, and other charges." In other words, the mortgagors are still obliged to keep up insurance and other

16

payments in the event of loss.  Additionally, neither clause nullifies or modifies paragraph 1, which requires the mortgagor to "pay when due" the principal and debt owed on the mortgage.  The contract specifies that, even in the event of loss or damage to the property, the obligation of the mortgagees to continue to make payments they otherwise owe through the mortgage contract is unaffected.

The Moores further argue, by analogy, that a mortgage holder is akin to a landlord and has the same duty to mitigate damages as a landlord does when seeking rent from a defaulting tenant, citing Somer v. Kridel, 74 N.J. 446, 456-57 (1977).  This contention is unavailing.

A mortgage holder is not akin to a landlord.  Unlike a landlord, who can rent out a vacant apartment to a new tenant and thereby reduce the debt of a defaulting, previous tenant, a mortgage holder has only a security interest in a property with no control over the land itself until a foreclosure and deed transfer is completed.

"Nothing is better settled in New Jersey than the rule that, in the absence of a contrary agreement between the parties, the mortgagor has the exclusive right to possession of the mortgaged property until default in performance of the conditions of the mortgage."  29 N.J. Practice, Law of Mortgages § 14.1 (Myron C. Weinstein) (2d ed.); see also McCorristin v. Salmon Signs, 244 N.J. Super.

17

503, 508 (App. Div. 1990) ("[P]rior to default, a mortgagor has the exclusive right of possession and all of the incidents related thereto. . . . The mortgagee is not the owner of the property unless there is a foreclosure and sale to the mortgagee."). A mortgagee can only vindicate its interests in the loan by bringing a foreclosure action; that is what Carrington appropriately did here.

The Moores also argue there is a duty based in the mortgage contract, because the contract obligates the mortgagor to obtain insurance, and allows the mortgage holder to impound insurance payments to pay off the mortgage. Related to this point, the Moores argue that, as a sophisticated business entity, the mortgage holder has a responsibility to pursue recovery after other sophisticated parties, here the insurance providers, rather than the homeowners.

Contrary to their claims, the mortgage contract demonstrates that there is no transactional relationship because the insurance clauses in the contract do not affect the Moores' obligation to pay the debt. In general, a "mortgagee has absolutely no interest in the proceeds of the mortgagor's insurance in the absence of an agreement to insure for his benefit." 29 N.J. Practice, Law of Mortgages § 14.5(Myron C. Weinstein) (2d ed.) (describing this is "the universal rule" and citing cases nationwide); Midland Lumber & Supply, Inc. v. J.P. Builders, 265 N.J. Super. 246, 249 (Law. Div. 1993) (holding a contract of insurance is

A-4084-18T3

personal to the insured person, not property, and a lien holder, by virtue of its lien, is not automatically entitled to insurance proceeds). Therefore, mortgagees regularly protect their property interest by including a clause in the mortgage contract requiring the mortgagor to carry insurance. Id. at 250.

As the Moores note, their mortgage contract had such a clause requiring them to purchase insurance on the property. As already described, however, the contract demonstrates that an insurance payout and the underlying mortgage are not related. The contract specifies that insurance payouts do not affect a mortgagor's monthly obligations to make insurance payments, and are not tied to their obligation to make payments toward the underlying debt. As such, the Moores' obligation to make mortgage payments was independent of the results of any insurance claim. Contrary to their arguments, the mortgage contract provides that the mortgage holder's right to the principal is not tied to insurance on the property, and that the duty to continue to repay the mortgage loan rests with the mortgagors.

Lastly, from a policy perspective, the Moores' arguments, if vindicated, could pose significant problems for homeowners. A requirement that a mortgage holder has a duty to involve itself in every insurance dispute between a homeowner and insurance company, or otherwise risk losing the right to

19

foreclose on the mortgage, would upset the well-established and firmly held rights of mortgage holders to pursue foreclosure. It would entangle foreclosure claims in other lawsuits. This practice could discourage the issuance of mortgage loans in the first place. A further requirement that a mortgage holder preemptively bring a foreclosure action whenever homeowners sought to recover insurance proceeds on their property would greatly add to the burdens of mortgagors in an already stressful situation.

In sum, caselaw and other legal precedent clearly establish the right of a mortgage holder such as Carrington to receive mortgage payments, even after loss or damage to property, and to foreclose in the event of default. The Moores seek to invert this relationship by requiring a mortgage holder to risk losing this right unless it actively takes part in lawsuits to recover insurance proceeds on damaged property. The entire controversy doctrine should not be used to do so. The trial court sensibly disallowed that from occurring.

Although the circumstances of appellants, who lost their home in the wake of a devastating natural disaster, are surely sympathetic, their legal arguments are simply without merit. We need not comment on any further points made or suggested in their brief. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4084-18T3